# B. ROTH TOOL COMPANY, Respondent, v. CHAMP SPRING COMPANY, Appellant.

### St. Louis Court of Appeals, April 1, 1902.

1. **Injunction, Mandatory:** LEASE, NOTICES TO SURRENDER POSSESSION OF PREMISES: STIPULATED TIME OF NOTICE, CONTROLS. Appellant (lessor) covenanted to furnish respondent (assignee of lessees) steam and power sufficient to run its factory six days in the week for a stipulated consideration. The lease provided that either party might, after the first year, terminate it by giving the other six months' notice to that effect. After the lease had run from June 15, 1897, to March 30, 1901, the lessor gave the six months' notice to respondent, assignee of the lessees, but before the expiration of this notice, the lessor, upon the theory that the lease created a tenancy at will, gave notice that it should terminate at the end of thirty days after the service of such notice, which shortened the time of surrendering possession of the premises fifteen days; and because respondent did not surrender the premises at the end of the thirty days' notice, the appellant turned off the steam and power required by the lease to be furnished: *Held*, that the temporary injunction issued to compel appellant (lessor) to restore and continue the service of furnishing respondent (assignee of lessees) steam power, was rightfully issued.

2. ———: ———: ———: TENANCY FOR YEARS DEFINED: SEC. 3415, R. S. 1899, CONSTRUED. The lease created an estate for years; for any leasehold term for either part of a year or for one or more years, falls in that class of estates.

3. **Lease:** ASSIGNMENT: STATUTE OF FRAUDS. The assignment of a lease, to be valid between the parties under the statute of frauds, must have been in writing, but the appellant (original lessor) not being a party to the assignment, can not avail itself of the statute to have the lease declared void.

4. ———: ———: ASSENT OF LESSOR INFERRED, WHEN. No express assignment, either written or verbal, was shown in this

Roth Tool Co. v. Champ Spring Co.

case, but as it is an equitable proceeding one may be presumed if it is clear that the intention of the original lessee was to make an assignment, which we find was sufficiently shown to warrant the presumption of an assignment.

5. ———: WHEN ASSIGNEE OF A LEASEHOLD MAY SUE FOR A BREACH OF A COVENANT CONTAINED IN. When a covenant in a lease relates to a thing *in esse*, is essential to the enjoyment of the leasehold and to be performed on the premises and the lessee's assignees are named in the lease itself as parties who may come into enjoyment, such assigns may sue on said covenant if it is broken.

6. ———: ———: ———: INJUNCTION WAS RIGHTFULLY IS-SUED. The trial court ruled rightly, and respondent was entitled to a writ of injunction; also, the temporary writ was properly dissolved.

Appeal from St. Louis City Circuit Court.—*Hon.* ———, Judge.

AFFIRMED.

*R. M. Nichols* for appellant.

(1) If the clause "this lease may·be terminated any time after June 15, 1898, by either party giving six months' notice in writing" (June 15, 1898, being the last day of the term), could be held to have the effect to keep alive the written lease, so that the writing would constitute an "agreement" between the parties, within the meaning of sections 3414, 3418 and 4110 of the Revised Statutes, still the writing would not create a lease for the reason that it has "no determinate" period. R. S. 1899, sec. 3414, 4110; Corby v. McSpadden, 63 Mo. App. 648; McClain v. Ashire, 72 Mo. App. 398; Amick v. Brubaker, 101 Mo. 476; Hobart v. Murray, 54 Mo. App. 250. (3) Conceding that the language used in the notice of March 30, wherein appellant speaks of "our lease," is referable to the writing, this could not cure the in-

firmity in a writing having no "determinate period" or fixed term because the agreement in writing must be signed by the parties. R. S. 1899, sec. 4110; Combes v. Midland T. Co., 58 Mo. App. 113; Lehman v. Nolting, 56 Mo. App. 551; Hoover, Rhodes, etc. v. Pacific Oil Co., 41 Mo. App. 317. (4) Conceding that the writing or expired lease creates a lease between appellant and Wm. Boefer, Charles A. and Edwin B. Roth, if the term was less than two years, no assent of the lessor to the assignment of the same to respondent was averred or shown, and if the term was greater than for two years no assignment in writing was shown in conformity with the statutes. R. S. 1899, secs. 3415, 4107, 4110; Johnson v. Reading, 36 Mo. App. 306; Trefenbrun v. Trefenbrun, 65 Mo. App. 235; Sanford v. Tremlett, 42 Mo. 384; Nally v. Reading, 107 Mo. 351. (5) Without a written assignment of the lease, containing the stipulation to furnish the steam, there could be no privity of contract between respondent and appellant, and consequently no right in respondent to compel appellant to perform the contract, and no right on the part of appellant to require respondent to perform any covenant of the contract. Glasner v. Fredericks, 73 Mo. App. 428; Railroad v. Railroad, 135 Mo. 187; Haley v. Boston Belting Co., 140 Mass. 73.

*Ed. L. Gottschalk* for respondent.

(1) The lease has a definite termination under the maxim. *"Id certum est quod certum reddi potest."* Tiedeman on Real Property, sec. 173, p. 136; McClain v. Abshire, 72 Mo. App. 399. (2) The notice was given March 30, terminating the lease September 30, 1901, but steam was turned off September 15. Notice should have terminated on rent day and not in the middle of a rental month, on the same principle as a notice under a monthly tenancy. Russell v. McCartney, 21 Mo. App. 547; Wilgus v. Lewis, 8 Mo. App.

339; Gunn v. Sinclair, 52 Mo. 330. (3) The notice to quit is addressed to the B. Roth Tool Company, and says: "Our lease with you requires us to give you six months' notice in writing to terminate the lease." This recognizes the plaintiff not only as the tenant, but a tenant under the lease; also that the lease was still in force and that defendant is bound thereby. (4) The lease providing for a six months' notice, a monthly notice has not the effect of terminating the tenancy.

GOODE, J.—The above-entitled suit was instituted the eighteenth day of September, 1901, for equitable relief by injunction against the appellant, on the ground that the respondent, a corporation, was entitled to the benefit of certain covenants contained in a lease theretofore made by the Champ Spring Company as lessor to E. B. Roth, Charles Roth and William Boefer, their successors or assigns, as lessees, the respondent having succeeded to the rights of said lessees under said lease, which was executed on the fifteenth day of March, 1897, for the term of one year, to commence on the fifteenth day of June, 1897, and end the fifteenth day of June, 1898.

The leasehold premises were in the city of St. Louis, and in addition to said premises, the Champ Spring Company was to furnish the lessees with steam and power sufficient to run their factory six days in the week, all for the consideration of one hundred and forty-five dollars a month.

Another clause in the lease, material to this controversy, was as follows: "This lease may be terminated any time after June 15, 1898, by either party giving six months' notice in writing."

The original lessees continued in possession and occupation of the premises until the sixth day of July, 1900, when they incorporated as the B. Roth Tool Company, which is the respondent.

Afterwards the following notice was addressed to and served on the respondent:

"St. Louis, March 30, 1901.

"B. Roth Tool Company.

"Gentlemen: Our lease with you requires us to give you six months' notice in writing to terminate the lease. We therefore notify you that your present lease with us expires six months from this date, as we are in need of the space you occupy, to enlarge our business. Please acknowledge receipt of this letter.

"Yours truly,
"CHAMP SPRING Co.
"C. E. CHAMP, President."

By that notice respondent's right to the premises would have ended on the thirtieth day of September, 1901.

Another notice was served, which is as follows:

"B. Roth Tool Co., Wm. Boefer, Charles A. Roth and Edw. Roth, St. Louis:

"You are hereby notified that the tenancy heretofore existing between you and the undersigned, of the property hereinafter described, will be terminated on the fifteenth day of September, 1901, at which time you are respectfully requested to remove from and surrender up to the undersigned the quiet and peaceable possession of premises. . . . And possession of said premises upon said fifteenth day of September, 1901, is now demanded of you.

"CHAMP SPRING Co.
"By C. E. M. CHAMP, President.
"St. Louis, Mo., August 13, 1901."

The last notice (which was given on the theory that the tenancy was from month to month) therefore, undertook to

terminate respondent's occupation fifteen days earlier than the first notice, and on respondent's failing to vacate at the date called for by the last notice, to-wit, the fifteenth day of September, 1901, the appellant turned off the steam and power which it was required by the lease to furnish and, as respondent was unable to obtain steam and power from any other source, it instituted this action to compel the appellant to restore and continue the service.

A temporary injunction was granted on the twenty-seventh day of September, 1901, but was dissolved on the trial and the bill dismissed, for the reason that, while respondent was entitled to the temporary writ at the time it was granted, the notice served March 30, to terminate the tenancy September 30, took effect on the latter date and as respondent's right to the premises had ended before the hearing of the cause, it was improper to continue the injunction longer; but the court found the respondent had succeeded to the original lessees' rights and taxed the costs against the appellant.

1. The lease in question was not void for uncertainty so that a tenancy from month to month arose, terminable on thirty days' notice by the landlord, as contended by the appellant. It fixed a certain time, to-wit, one year, with a proviso that after that time it might be ended by six months' notice from either party. Leases like this have been several times construed and always held to be sufficiently certain. Thompson v. Maberly, 2 Camp. 572; Regina v. Chawton, 1 Q. B. 247; Doe v. Green, 9 Ad. & E. 658. Of course, the present lease created substantially, though not technically, a tenancy at will after the first year by force of its terms. 1 Taylor on Landlord and Tenant (2 Ed.), p. 87. But if it had been technically a tenancy at will, a thirty days' notice was insufficient to end it because the parties had stipulated for a longer one; for the statute providing that a tenancy at will can be ended by thirty days' notice does not control if the parties stipulate in writing for a longer or shorter notice.

II. Neither a written assignment of the lease to the Roth Tool Company, by the lessees E. B. and Charles Roth and William Boefer, nor the written assent of the Champ Spring Company as lessor to an assignment, was shown, and appellant therefore claims that no privity of either contract or estate existed between it and the respondent by virtue of which the respondent was entitled to sue for the breach of any covenant contained in the lease.

In this connection certain statutes must be considered. The statute of frauds provides as follows:

"No leases, estates, interests, either of freehold or term of years, or any uncertain interest of, in, to or out of any messuages, lands, tenements or hereditaments, shall at any time hereafter be assigned, granted or surrendered, unless it be by deed or note in writing, signed by the party so assigning, granting or surrendering the same, or their agents lawfully authorized by writing, or by operation of law. R. S. 1899, sec. 3415.

The present lease created an estate for years, as any leasehold term for either part of a year or for one or more years, falls in that class of estates. 1 Taylor's Landlord and Tenant (8 Ed.), sec. 54.

It follows that an assignment of the lease, to be valid under the statute of frauds, must have been in writing; and if this was an action between the original lessees as assignors and the Roth Tool Company as assignees, on the contract of assignment, we would hold said contract void. But as we understand the law · in this State, the statute of frauds can not be availed of to invalidate a contract by one not a party to it. St. Louis, Keokuk & N. W. R'y Co. v. Clark, 121 Mo. 169; Kratz v. Stocke, 42 Mo. 351; Browne on Statute of Frauds (5 Ed.), sec. 135, and cases cited. And as the Champ Spring Company was no party to the assignment of the lease to the respondent, we fail to see how it can question the validity of that assignment, or claim that it was void be-

cause not in writing.   If both parties to a contract are willing to waive and do waive the requirement of the statute of frauds, and carry the contract into execution, an outsider ought not to be heard to question its effect; and all the more is this true in the present case, because the evidence shows appellant recognized the rights of the Roth Tool Company as tenant of the respondent for about two years, and sought to take no advantage of the change of tenants nor to treat the leasehold estate as extinguished.

III.   Provision for the protection of landlords against assignments or transfers by lessees of their terms when they are for less than two years, is made by another statute:

"No tenant for a term not exceeding two years, or at will, or by sufferance shall assign or transfer his term or interest, or any part thereof, to another without the written assent of the landlord; neither shall he violate any of the conditions of his written lease, nor commit waste upon the leased premises."   R. S. 1899, sec. 4107.

The lease we are dealing with was for a term less than two years at the option of the parties, and, therefore, falls within that statute; so that it was necessary for the Champ Spring Company to effectuate an assignment to the respondent either by a written assent thereto or by acts *in pais* sufficient to show that it waived the right to question the validity of the assignment on the score that it had not so assented.   We are of the opinion that it is concluded in both ways.   The notice addressed to the respondent company on the thirtieth day of March, 1901, stated in so many words that there was a lease between appellant and the respondent, which required appellant to give respondent six months' notice in writing to terminate it.   That letter can be construed as nothing less than a written acceptance of the respondent as appellant's tenant, and an assent to whatever assignment had been made by the original lessees to the respondent.

Furthermore, after the incorporation of the respondent,

rent was accepted from it and power supplied to it by the appellant without protest. If such acts are sufficient to validate an assignment of a lease made without the lessor's consent, when such consent is required, then the appellant is precluded from now contending that the assignment in this case was ineffective because not assented to in writing; and that such acts are sufficient has been several times adjudicated. Hynes v. Ecker, 34 Mo. App. (St. L.) 650; American Central Ins. Co. v. Railroad, 74 Mo. App. (K. C.) 89; Tyler Estate v. Geisler, id. (St. L.) 543.

No express assignment, either written or verbal, was shown in this case, but as it is an equitable proceeding, one may be presumed if it is clear that the intention of the original lessees was to make an assignment to the respondent. Smith v. Sterritt, 24 Mo. 260; Johnson County v. Bryson, 27 Mo. App. (K. C.) 341; Am. Cent. Ins. Co. v. Railroad, supra. It is obvious that after the plaintiff company was incorporated, it was treated by the members of the partnership as having acquired the rights and properties theretofore belonging to the partnership, including this leasehold. Hall v. Herter, 90 Hun. 280. We conclude, therefore, that for the purpose of this suit in equity, an intention to assign the lease was sufficiently shown to warrant the presumption of an assignment.

IV. The remaining question for consideration is as to the right of the respondent company to sue on the covenant of the Champ Spring Company to furnish steam and power to the lessees for the operation of the plant on the leased premises. A fair construction of the lease shows that the stipulation to furnish power (although that was rather in the nature of a contract of hiring than of lease) was to be coterminous with the duration of the lease and that the lessees were entitled to the same notice in respect to a discontinuance of the supply of steam and power that they were entitled to receive if it was intended to terminate the lease, to-wit, six

months. The notice served on the thirtieth day of March, called for the expiration of the lease on the thirtieth day of September, together with all rights of the respondent as tenant. But those rights continued to the date last mentioned and they were distinctly violated when appellant turned off the power on the sixteenth day of September—it was a violation too, which respondent was entitled to have enjoined, provided the benefit of that covenant enured to it as assignee. After devoting much thought and research to the subject, we have no doubt the covenant was one that would go to a lawful assignee and enable him to sue on it as long as he retained the leasehold estate.

Concerning the effect of an assignment of the unexpired term of a lease, certain rules which are pertinent to the question under consideration may be laid down as well established:

*First.* The assignment does not create privity of contract between the lessor and assignee even if the lessor assent to the assignment and accept the assignee as tenant. Board of Public Schools v. Ins. Company, 5 Mo. App. (St. L.) 91; Whetstone v. McCartney, 32 Mo. App. (K. C.) 430; Hynes v. Ecker, 34 Mo. App. (St. L.) 650; Tyler Estate v. Giesler, 74 Mo. App. (St. L.) 543. A case which seems to be the other way on this subject is Am. Cent. Ins. Co. v. Railroad, 74 Mo. App., supra.

*Second.* It does create privity of estate, if the landlord expressly or impliedly assents to the assignment. Ibid.

*Third.* As the relationship between a landlord or lessor and an assignee is by privity of estate (by which is meant that it grows out of the title and possessory right of the assignee to the premises under the assignment) instead of contract, only such covenants in the original lease as run with the land are binding on them. 1 Platt on Leases (1847 Ed.), 102; 1 Taylor on Landlord and Tenant (8 Ed.), sec. 260; 1 Wood on Landlord and Tenant, sec. 258; Craig v. Summers

(Minn.), 15 L. R. A. 236; Johnson v. Sherman, 15 Cal. 290; Consolidated Coal Co. v. Peers, 166 Ill. 361.

Was the covenant by the Champ Spring Company to furnish power one which ran with the land? is the next inquiry and one that involves a subject on which there is much curious blackletter learning which still seems to be binding law. "Observe, reader your old books, for they are the fountains out of which these resolutions issue," said the judges in Spencer's case (5 Coke 16), which shines as the beacon-light of authority on the question of what covenants are available to an assignee, or, what is the same thing, run with the land.

It may be said generally that all implied covenants run with the land and that necessarily; for *ex vi termini* they do not arise or subsist by contract and must arise or be implied from privity of estate and are therefore binding on all who are in privity of estate: such a contract is the implied one to pay rent for the use and occupation of premises as tenant when no rent is expressly promised. But the covenant by the appellant to furnish its lessees power was made by contract and, hence, whether it enured to the respondent as assignee, is to be resolved by some other rule or reason.

A vital circumstance, in many cases, is whether the lease was made to the original lessee *and his assigns,* or whether "assigns" were not mentioned. In this case the written lease was "to the parties of the second part and their successor or assigns," and this aids the respondent's cause.

The first, second and third resolutions in Spencer's case (1 Smith's Lead. Cas., * 68) were substantially as follows: First, when a covenant extends to a thing *in esse* (as to repair houses) parcel of the demise, the thing to be done is annexed and appurtenant to the thing demised, and will go with the land to the assignee, although he be not expressly named. Second, when a covenant extends to a thing which is not in being at the time of the demise (as to build a wall) it can not be appurtenant or annexed and will not bind the assignee

unless he be named; but if it relates to something to be done on the land, will bind him if he is named. Hunt v. Danforth, 2 Curtis (R. I.) 592; Bally v. Wells, 3 Wils. 25. Third, when the thing covenanted to be done is merely collateral to the land demised and does not touch or concern it (as to build a house on a different tract of land) the covenant does not run to the assignee even though assigns are named in the instrument. And, when the assignee is bound to the lessor on a covenant, he is entitled to the benefit of the covenant as against the lessor. Craig v. Summers, supra; Ecke v. Fisher, 65 Wis. 55; Norman v. Wells, 17 Wend. (N. Y.) 136.

In Hunt v. Danforth, supra, the lessee was entitled to compensation for new erections on the land from the lessor and it was held that covenant ran with the land so as to entitle the assigns of the lessee, they being mentioned in the lease, to recover the money for such improvement from the lessor. Exactly the opposite was ruled in Hanson v. Myer, 81 Ill. 321, because the lease in that case did not run to the lessee's assignee.

In Hemingway v. Fernandes, 13 Sim. 227, the landowner had granted a lease for the purpose of forming a railway for the conveyance of coal to certain wharfs, and the lessee, for himself and his assigns, covenanted with the owner and his assigns, to convey on the railroad all coal got from the colliery, or any other lands in the township, and to pay the lessor or his assigns two pence for every ton of coal so conveyed. The lessee afterwards assigned his interest in the colliery and land, and it was held that the covenant in regard to conveying coal on the railway and paying two pence per ton to the lessor in respect to it, ran with the land and was binding on the assignee. This decision was based on the fact that the word "assigns" was used in the lease.

In Wakefield v. Brown, 9 Q. B. 209, a covenant to repair and paint was made by the lessee. The lease was assigned and an action was brought for a breach of that covenant

against the assignee and this covenant was held clearly. to run with the land.

It is obvious that the Champ Spring Company's agreement to furnish power to operate the lessees' factory in the demised premises was a real covenant by either the first or second resolution in Spencer's case, and by all the foregoing authorities.    It related to a thing *in esse,* was essential to the enjoyment of the leasehold, was to. be performed on the leasehold premises, was in no way collateral thereto and the assigns of the lessees were named in the lease as parties who might come into enjoyment.    An exact precedent made by high authority exists.    Jourdan v. Nelson, 4 Barn. & Ald. 266, was a suit on a covenant whereby the landlord covenanted to and with the lessee and his assigns, to supply the messuages and tenements let with a sufficient quantity of good water for three guineas per annum for each house.    The assignee of the lessee sued on said covenant and one defense was that it was personal; but the chief justice of the Court of King's Bench said that it was a covenant "which respects the premises demised and the manner of enjoyment and I have no doubt therefore that it is a covenant which runs with the land and that the assignee may sue the reversioner for the breach of it."

As the premises in question were leased for a manufacturing plant, and an agreement by the appellant to furnish power to run the plant was made a part of the contract and was vital to the enjoyment and use of the premises by the lessees, because they could obtain power from no other source, and as privity of estate between appellant and respondent appears, we hold the covenant passed to the respondent and that it was entitled to sue for a breach of it, or to prevent a breach if irreparable damage would have resulted.

It follows that the court below was right in its judgment that respondent was entitled to a writ of injunction, and right also in dissolving the temporary writ on the trial; for the lease had then expired by virtue of its terms pursuant to the

notice given by appellant to terminate it on the thirtieth day of September. We, therefore, affirm the judgment. *Bland, P. J.,* and *Barclay, J.,* concur.