## WARD-TRUITT COMPANY *v.* BRYAN AND LAMB *et al.*

The evidence in the case demanded a finding for the plaintiff; and the court, having properly directed a verdict in its favor, erred in setting it aside upon motion of the defendants.

FEBRUARY 26, 1916.

Complaint. Before Judge Larsen. Twiggs superior court. October 15, 1914.

Ward-Truitt Company brought suit upon certain promissory notes dated December 21, 1911, against S. A. Bryan and C. B. Lamb as partners in the name of Bryan and Lamb. The defendants filed a plea, denying that they were partners at the time of giving the notes, and setting up that, while they had been partners, the partnership had been dissolved and a corporation formed, with the two named individuals as officers and stockholders of the same; that the corporation had been adjudicated a bankrupt and discharged in the bankruptcy court; and that the plaintiff had notice that the notes sued upon had been listed as claims provable in bankruptcy, and, having been discharged in bankruptcy, the cor-

49

poration was relieved of the payment of any claim or debt provable in bankruptcy. Upon the trial of the case the plaintiff introduced the notes sued on, all payable to the plaintiff and signed "Bryan and Lamb." S. A. Bryan testified as follows: "I am a stockholder in the corporation of Bryan and Lamb, which was organized under charter, with the following officers elected, viz.: I was elected president and treasurer, and Mr. Lamb was elected vice-president. This concern did a mercantile business, but we never kept any minutes of our affairs, as there was only Mr. Lamb and myself in the business. These notes on which Bryan and Lamb is being sued were given for goods bought by Bryan and Lamb from the plaintiff. We dealt with the plaintiff in the purchase of these goods and the giving of these notes as a corporation, and the plaintiff so understood it. Mr. Truitt, who is a partner in the plaintiff company, came to me on one occasion and begged me for an hour to sign the note (that I have in my hand) personally, and told me that he knew we were incorporated, but that he wanted my personal signature to the note; and I refused to indorse it. However, Mr. Truitt prior to this time had got me to indorse some notes that were paid. I refer to these notes in hand, which are signed 'Bryan and Lamb' and 'S. A. Bryan.' These other notes which we are being sued on Mr. Truitt tried to get me to sign also, but I refused to do it. He knew at that time that we were incorporated, and all of our creditors knew it. We dealt with the Ward-Truitt Co. as a corporation, and neither Mr. Lamb nor myself would sign these notes; in fact there was never any partnership between Mr. Lamb and myself under the name of Bryan and Lamb after this charter was granted, during the period of our dealings with Ward-Truitt Co. These notes sued on are a corporate undertaking. Neither Mr. Lamb nor myself ever authorized anybody to sign our names to notes as partnership or individuals. The partnership business of Bryan and Lamb, composed of S. A. Bryan and C. B. Lamb, was started the year before this charter was granted, and we ran the business as a partnership until 1908, until we could get the charter. I do not recall whether we ever did any business with the firm of Dougherty-Ward-Little & Co., and I don't think I knew Mr. Truitt when he was with that company. We never did get a copy of our charter from the clerk. When I say that we were organized as a corpo-

ration I mean that after the charter was granted we went ahead and agreed on who would be the officers; there was nobody besides Mr. Lamb and myself to say anything about it. We did not have any subscription for the capital stock, except between ourselves, and we didn't agree to become stockholders by signing any writing. There was no stock in the company ever issued to us; we just paid in what we had, turned the business we already had over to the company. We didn't have any minutes, or stock subscription or stock certificates, but we had applied for the charter and it was granted. After the charter was granted we didn't make any changes in our books at all, except in the usual course of business, such as charges and credits. In fact the only thing we had in the shape of a corporation that was on record was the charter. Neither did we have anything off the record except the business; nothing in the shape of papers or anything like that. We had no shares of stock. We went right on with the business in the name of the company—of the corporation—just like it was before the incorporation. These notes sued on were given for merchandise. At the time this charter was granted I had given notice to everybody that I talked to about the matter that the partnership of Bryan and Lamb had been dissolved. I had talked to Mr. Truitt about it, and he knew it prior to the signing of these notes. Mr. Truitt personally had never sold me any goods; the bill of goods which these notes are to cover was bought in the house as well as I remember. Mr. Truitt was not the salesman that sold me the goods for which the notes are given; he was the financial man looking after the collections. The goods for which we are being sued were sold to us before these notes were taken; the notes were taken by Mr. Truitt himself at Danville, Ga., at our place of business. At the time the notes were given we already owed Ward-Truitt & Co. the amount represented by the notes; they were just given simply to close the account. The goods were bought right about the first of September, or shipped about that time; and the two notes in evidence which are marked paid had been given to cover our indebtedness to the Ward-Truitt Co. up to the time the notes we are being sued on were given. These notes that are marked paid were personally indorsed by me, and these other goods were purchased after these notes were given. The Ward-Truitt Co. knew, at the time that these last notes were given, that we were doing business as a corporation."

Defendant Lamb testified: "I am a stockholder in the corporation of Bryan and Lamb. I did not execute the notes sued on, did not authorize any one to sign the notes for me, and didn't know anything about it. Prior to the signing of these notes there was no partnership of Bryan and Lamb in existence; we were doing business as a corporation and not individually, and I never authorized anybody, either individually or as a partnership, to execute these notes, and have never ratified the action of any one in signing them. When we got our charter we just got together and agreed on the positions we should each take in the corporation. I don't remember whether this special transaction was at the store, but we generally got together there, and did so as soon as we got our charter. Mr. Bryan and I had been doing business together as partners up to that time, and had got together at the store practically every day, but I didn't stay at the store as regularly as he did. We didn't sign any subscription for the stock; I didn't sign any written agreement; we only had a verbal agreement. I don't know whether Mr. Bryan kept any record of the business or not, but so far as I know we never had any minutes. We didn't change our bookkeeping at all; we just went right on as we had before. Personally I have never done any business with the Ward-Truitt Co. Mr. Bryan has charge of that part of it."

The jury, under the direction of the court, returned a verdict for the plaintiff, and a judgment was entered thereon against Bryan and Lamb as partners and against the individuals alleged to be the members of the firm. The defendants filed a motion for a new trial, containing, besides the general grounds, an assignment of error on the direction of the verdict. Upon the hearing of the motion the court set aside the verdict and granted a new trial, and the plaintiff excepted.

*John R. L. Smith,* for plaintiff.

BECK, J. (After stating the facts.) The plaintiff insists that a verdict in its favor was demanded in the court below, and that the court properly directed the verdict, and erred in setting that verdict aside upon motion made by the defendants. We agree with counsel for the plaintiff that there was never any proper organization of the corporation as alleged to exist in the answer of the defendants. There was no stock subscription, or list of stockholders; no minutes were kept. In view of such facts, we are of the opin-

ion that there was no change in the relationship of the individuals composing the firm of Bryan and Lamb. While the defendants do testify that the partnership had been dissolved, in the light of other evidence in the case, touching the forming of a corporation, it clearly appears that they consider the partnership as dissolved and transmuted into a corporation by the fact of a so-called organization of the corporation under the charter and the election of officers. / But, as we have pointed out, there was no organization, no subscription to stock, no corporation. Scarcely, it may be said, was there a shadow of a corporation. It is not merely the case of a defective or imperfect organization of a corporation, or some irregularity in the formation of the corporation; but the corporatin was non-existent. And mere uncontradicted testimony that the plaintiff dealt with such corporation as a corporation will not prevent the enforcement of a claim against the firm whose names are signed to the notes. Suppose in this case that the corporate stock of the company amounted to $10,000, and there had been paid in but half of the amount; for how much would Mr. Lamb, and for how much would Mr. Bryan, be liable to creditors for unpaid subscriptions? Neither of them had any definite number of shares of stock; what they did was all in parol. And if such pretended organization is to be treated as a corporation, so as to exempt the alleged stockholders from liability as partners, then it would seem that any two merchants doing business as partners could simply say to one another, we will consider ourselves a corporation—I will be president and you secretary and treasurer; and this fact would exempt them from liability as partners to a creditor selling them goods with knowledge of this formation of a corporation. *Judgment reversed. All the Justices concur.*