29326. GILBERT HOTEL No. 22 INC. *v.* BLACK *et al.*

DECIDED MARCH 20, 1942.   ADHERED TO ON REHEARING, APRIL 3, 1942.

*Poole, Pearce & Graham,* for plaintiff.

*Abe Fitterman, Robert T. Efurd, Mose S. Hayes, George & John L. Westmoreland,* for defendants.

FELTON, J.   Gilbert Hotel No. 22 Inc., alleging itself to be a corporation, brought suit against William H. Black and William M. Mabson, agent for Black in certain acts complained of, seeking relief by injunction, receivership, accounting, etc., and claiming

damages for alleged wrongful eviction by dispossessory warrant proceedings from certain premises alleged to have been lawfully occupied by the plaintiff in the conduct of a hotel as transferee of a lease executed by Black's predecessor in title, Wilharbla Realty Company, to Hubert Gilbert and Earline Gilbert, a copy of which was attached to the petition. The defendants answered denying liability, and the defendant Black filed a plea of nul tiel corporation and also a plea of the statute of frauds as to the alleged transfer of the lease. An interlocutory hearing was had and all of the prayers for temporary relief in equity were denied. Demurrers filed to the petition as amended were overruled. No exceptions were taken to the rulings. Before the case came on for trial the petition was further amended by enumerating items of property claimed by the plaintiff to have been seized in the aggregate sum of $2007.20. It was alleged that "Plaintiff has been injured and damaged in the sum of $8007.20, which consists of the aggregate of the personal property seized as itemized above, plus $6000 damage for the loss of the premises to which plaintiff was entitled under the lease contract attached hereto. That all of said damage is the proximate result of the wrongful acts of defendants as set out herein, in committing the said acts of trespass." The lease contract attached to the petition provided, among other things, that in the event of cancellation by the lessor within the first year from its date the lessees would be entitled to a certain amount as liquidated damages, and if cancelled within the second year the amount of such damages would be $6000. It is thus seen that the amount of recovery sought by the plaintiff consists of the amount of alleged damage to the property enumerated in the petition in the sum of $2007.20 and the sum of $6000 fixed by the lease as damages in case of breach by the lessor. After the introduction of evidence a nonsuit was granted by the court on motion of the defendants on the grounds that the plaintiff had not made out a case and that there had been no legal assignment of the lease to the plaintiff. The case was taken to the Supreme Court which ruled that the last amendment converted the action into a plain suit for damages although the allegations and prayers of an equitable nature were not in terms stricken, and accordingly transferred the case to this court. See *Gilbert Hotel No. 22 Inc.* v. *Black,* 192 *Ga.* 641 (16 S. E. 2d, 435).

The following assignments of error are made in the bill of exceptions: (1) The court erred in granting a nonsuit. (2) The court erred in excluding from evidence a certan "daily transcript" purporting to show accounts due by guests of the hotel through October 9, 1939, at the time of the alleged trespass by the defendants, objection having been made by the defendants that it was not properly proved and was incompetent. (3) The court erred in excluding from evidence an agreement dated October 23, 1937, entered into between H. Gilbert and Earline Gilbert, parties of the first part, and Mrs. Rose Herrington, party of the second part, in which it was recited that the Gilberts had acquired a certain ten-year lease, as per copy attached to the written agreement, of premises located at 73 and 75 Pryor Street N. E. in Atlanta, Georgia, and wherein it was agreed in substance that Mrs. Herrington had paid to the Gilberts $3000; that a Georgia corporation of 100 shares of no-par value common stock would be formed by the parties, Mrs. Herrington to subscribe to 49 shares; the parties of the first part to subscribe to 51 shares of stock, in payment for which they were to execute and deliver a sublease of the premises leased to them, and at the first meeting of the proposed corporation Mrs. Herrington would be appointed resident manager of the hotel to be operated by the corporation; that in consideration of certain services by the Gilbert System Hotels, in which the Gilberts were interested, the proposed corporation would pay to the Gilbert System Hotels, a corporation, 7½ per cent. monthly of the gross business done the preceding month; that pending the formation of the corporation to be known as Gilbert Hotel No. 22 Inc. the hotel should be operated, effective September 15, 1937, as though the corporation had been formed; that the party of the second part would share equally with the parties of the first part in the profits from the operation of the hotel, the party of the second part to receive in all events not less than $750 per annum in addition to her salary. Objection to the admission in evidence of the written agreement was made by the defendants on the ground that it dealt with a partnership between the parties and was immaterial and irrelevant to the issue whether or not the defendants had illegally evicted a corporation, Gilbert Hotel No. 22 Inc., that the partnership could not form a corporation, and that the agreement was not binding on the defendants. (4) The court erred in excluding

from evidence testimony of Mrs. Herrington, at the time of the trial Mrs. Roy Timmerman, that at a meeting in April, 1939, between her and the Gilberts the lease acquired by the latter from Wilharbla Realty Company was verbally assigned to Gilbert Hotel No. 22 Inc., the objection being made that the assignment was not in writing. (5) The court erred in excluding a statement from Mrs. Timmerman that Gilbert Hotel No. 22 Inc. had been treated as a corporation, objection having been made by the defendants that such statement was a conclusion. (6) The court erred in refusing to permit H. Gilbert to answer a question as to when certain payments were made by check by Gilbert System Hotels for rent, objection having been made that the dates of payment were evidenced by the checks which would be the best evidence. (7) The court erred in excluding testimony of H. Gilbert that the hotel was operated as if a corporation, Gilbert Hotel No. 22 Inc., had been formed, objection having been made that the statement was a conclusion.

■ Much evidence is contained in the record and many contentions are made in the brief of counsel for the plaintiff in error, but that portion material to a consideration of the question whether or not the court erred in granting a nonsuit may be summarized as follows: Hubert Gilbert and Earline Gilbert, his wife, were interested in a corporation, Gilbert System Hotels, which sometimes operated hotels in the name of the corporation but in most instances supervised the conduct and operation of, and to some extent financed, hotels primarily operated under separate corporate charters in various States. Gilbert System Hotels derived certain compensation from the respective hotels in return for the aid received, particularly from the personal supervision of Hubert Gilbert and from advertisements as a system of chain hotels or "Gilbert Hotels" and the good will inuring to each by reason of the association. Wilharbla Realty Company, a New York corporation, of which William H. Black was president, owned certain premises at 73 and 75 Pryor Street N. E. in the City of Atlanta, the "Mid-Town Hotel" being located thereon. Subsequently to the lease hereinafter referred to, and before the institution of the dispossessory-warrant proceeding complained of by the plaintiff, Black succeeded to the title to the aforesaid premises. On September 24, 1937, the Wilharbla Realty Company in writing leased to Hubert

Gilbert and Earline Gilbert these premises for the operation of a hotel for a period beginning "on the 1st day or the 15th day of October, 1937, and ending on the last day of September, 1947, at midnight," at stated rentals, the lease containing, among other provisions, the following numbered paragraphs: "2. Lessee accepts this lease and agrees to pay to the lessor, its successors, representatives or assigns, at their offices in the City of New York, promptly on the first day of each month in advance, during the term of this lease (less commissions to the Adair Realty and Loan Company as set forth hereinafter . . ) six hundred fifty and no/100 ($650) dollars for the first year. If monthly rental is not paid on the first, it shall draw interest at four per centum until paid, but in no event paid later than the fifteenth of every month of this lease. [Then follows statement as to rentals for succeeding years.] 3. It is agreed that upon the failure of the lessees or their assigns (should an assignment hereof be permitted) to pay in full any sum of money which may be due by him hereunder, or to comply with any other of the terms, conditions, or agreements of this indenture, the lessor, acting through himself or his agents or representatives, shall have the right after fifteen days written notice delivered to second parties and without legal process, to declare this lease to be at an end. Thereupon the same shall be at an end except for the purpose of enforcing rights then accrued hereunder. The lessor, or his agents, representatives, or assigns, may forthwith enter upon said premises and forcibly or otherwise remove all persons and things therefrom and repossess the same, all notice provided by law for the termination of tenancy and all legal process being hereby waived. . . This right [to sublet in case of a breach by the lessees, etc.] and all rights in this lease reserved by or conferred upon the lessor are cumulative and not restrictive of any other rights allowed by law or reserved herein. Time is of the essence of each provision of this instrument. . . 5. This lease shall not be assigned or sublet to other than a corporation organized by the lessees, nor shall the lessees sublet the premises or any part thereof, without the written consent of the lessor. This provision shall not be waived except in writing. Lessees agree not to leave the premises herein leased unoccupied, nor to do or to permit any act which would vitiate the fire insurance against said property or increase the insurance rate.

If there is a transfer or substitution of this lease as provided herein, that shall in no wise affect the liability of lessees for the rent and percentage of gross receipts hereunder. . . 8. In the event these premises are subleased, or this contract is assigned under the terms and in the manner herein permitted, such subtenant or assignee shall become liable directly to the lessor hereunder to the same extent as to all things herein mentioned, without relieving any liability of the lessees. . . 19. The lessor's failure to take advantage of any default on the part of the lessee shall not be construed as a waiver thereof. Nor shall any custom or practice which may grow up between the parties in the course of administering this instrument be construed to waive or to lessen the right of the lessor to insist upon the provisions hereof."

Mrs. Rose Herrington, afterwards Mrs. Roy Timmerman, came to Atlanta at the instance of Hubert Gilbert, and as manager operated the hotel on the premises leased by the defendant. Rents were paid to the lessor by checks issued and signed by "Gilbert System Hotels" on voucher forms, and were mailed from that corporation's headquarters in Jacksonville, Florida, to the lessor in New York. These vouchers specified the periods for which the rents were being paid, and showed that the rents were for "rent on Gilbert Hotel, Atlanta," "rent for Mid-Way," rent for a stated period, "rent on Gilbert Hotel No. 22," etc., but no check or voucher showed a remittance for a corporation with the corporate name of "Gilbert Hotel No. 22 Inc." There was considerable evidence as to whether or not at the time of the dispossessory-warrant proceeding all due rent on the hotel had been paid, but it is conceded by the plaintiff in error that the rent was somewhat in arrears, although it is argued that the lessor had established a custom of accepting belated payments from time to time, and that a certain tender into court sufficiently cured any delay in respect to any past-due rental.

On October 5, 1939, Black, through his attorney at law, Abe Fitterman, took out a dispossessory-warrant proceeding against Gilbert System Hotels, Rose Herrington, agent-manager, and Mrs. Rose Herrington, as defendants in possession of the premises at 73 and 75 Pryor Street, Atlanta, Georgia. Service was had on Mrs. Rose Herrington on October 5, 1939, she apparently being in charge of the property. No action was taken in resistance of the

dispossessory warrant. Mrs. Herrington testified that she sought from the attorney of Black a stay of the proceedings until she could communicate with Hubert Gilbert, whose whereabouts at the time were unknown to her, and she finally decided to go to New York to see Black, being assured by his attorney that a temporary abatement would be indulged. She left Atlanta before the expiration of three days after service of the process, but on October 10, 1939, dispossession was effected, and Mabson, agent of Black, was put in possession of the premises. On October 28, 1939, the present action was brought by Gilbert Hotel No. 22 Inc.

The dispossessory-warrant proceeding here involved was brought against Gilbert System Hotels, a corporation, and Mrs. Rose Herrington, as manager, whereas the present suit is sought to be maintained by "Gilbert Hotel No. 22 Inc.," claiming to have held a lease by assignment on the premises in question. Although on September 24, 1937, the defendant executed a lease to two individuals, Hubert Gilbert and Earline Gilbert, his wife, it would appear that the defendant, by reason of their interest in the supervisory corporation, Gilbert System Hotels, and the fact that rentals were paid by that corporation, treated it as being in possession of the hotel through Mrs. Herrington, but the questions here involved are whether or not "Gilbert Hotel No. 22 Inc." could properly maintain the suit and recover for eviction and for trespass to certain personal property which consisted of a Neon sign, 53 mattresses, 75 blankets, 500 yards of curtains, 63 waste-paper baskets, money in cash drawer in the sum of $70, accounts receivable $790.75, all of the total value of $2007.20.

The plaintiff contends that it was rightfully in possession and not in default, the defendant knowing that it was paying rent in pursuance of a course of conduct in which he accepted belated payments, and no notice having been given it, in respect to arrears, that a strict compliance with the terms of the lease would not be insisted upon; that the dispossessory warrant proceeding had not been properly brought, inasmuch as no demand for possession had been made as required by Code § 61-301; that the proceeding was not brought in the name of the original lessees or the plaintiff, the alleged transferee of the lease, as defendant; that in any event the defendant committed a trespass in seizing the property above mentioned without having acted under any distress warrant.

The evidence, and that which was erroneously excluded as hereinafter referred to, was sufficient to authorize the finding that the plaintiff was a de facto corporation at the time of the levy by the defendant of the warrant to dispossess and at the time of the filing of this suit, and that as such the plaintiff was in charge of the defendant's hotel when the warrant to dispossess was executed, and that the defendant seized certain described personal property as shown by the evidence as being in the possession of the plaintiff. Slight evidence is sufficient to establish proof of the existence of a de facto corporation. 13 Am. Jur. 193-199, §§ 47-56; *Georgia Southern &c. R. Co.* v. *Mercantile Trust &c. Co.*, 94 *Ga.* 306 (21 S. E. 701, 32 L. R. A. 208, 47 Am. St. R. 153). The charter was procured, a meeting of the stockholders was held, and officers were elected subsequently to the lease and before the acts complained of. The facts that no stock subscription was paid in and no stock issued and that no minutes were made would not prevent the corporation from being one "de facto." *Burns* v. *Beck & Gregg Hardware Co.*, 83 *Ga.* 471 (10 S. E. 121); *Howard* v. *Long*, 142 *Ga.* 789 (83 S. E. 852).

The lessor can not complain that the lease was not transferred in writing, on the ground that it violated the statute of frauds. "The defense of the statute of frauds is personal, and can not be interposed by strangers to the agreement." 27 C. J. 304. "The term 'strangers' within the meaning of the rule includes . . a lessor in the case of a verbal assignment of the lease by the lessee to another." 27 C. J. 305; B. Roth Tool Co. *v.* Champ Spring Co., 93 Mo. App. 530 (67 S. W. 967); Cleveland C. C. & St. L. R. Co. *v.* Wood, 189 Ill. 352 (59 N. E. 619); 25 R. C. L. 733, § 380; 1 Tiffany on Landlord and Tenant, 999, § 160.

Section 5 of the lease provided: "This lease shall not be assigned or sublet to other than a corporation organized by the lessees nor shall the lessees sublet the premises or any part thereof without the written consent of the lessor. . ." Assuming that this provision is ambiguous, of which fact we are not convinced, there was no evidence throwing any light on what the parties intended it to mean, and it becomes the duty of the court to construe it. Our construction of the provision is that a transfer of the lease does not require the written consent of the lessor, but that a subletting of the premises does, as respects a transfer or subletting

to what could be found by the jury to be a corporation organized by the lessees, and the lessor could not complain under the evidence in the record because he knew such a transfer was contemplated when he executed the lease and no written approval was required.

Section 19 of the lease, assuming that it is valid and not contrary to public policy in being an agreement limiting one's ability and right to contract in the future, would not defeat the action here because even if the rent was in default the rightful tenant is entitled to a demand for the premises before dispossessory proceedings are instituted. Code § 61-301.

■ It was error to exclude from evidence a contract entered into by H. Gilbert, Earline Gilbert and Mrs. Rose Herrington, dated October 23, 1937, which provided in part as follows:

"Whereas H. Gilbert and Earline Gilbert acquired that certain ten-year lease more fully described in the copy of said lease hereto attached and made a part of this agreement, covering the Mid-Town Hotel, located at number 73 and 75 Pryor Street, N. E. in Atlanta, Georgia, and whereas the provisions of said lease consent to and permit the lessees making a sublease covering said property, but does not release the lessees from liability thereby, and whereas the said Rose Herrington has this day paid to the parties of the first part, the sum of three thousand ($3000), the receipt of which is hereby acknowledged, said payment being the total cash consideration, to be paid by the party of the second part, as hereinafter set forth. And further agree to form a Georgia corporation of one hundred shares of no par value, of all common stock, subscribing to forty-nine shares of said stock herself, the cost of said corporation to be paid from the funds of the business; and

"Therefore parties of the first part hereby agree to subscribe to fifty-one shares of said common stock to corporation above referred to and to execute and deliver a sublease, under the exact and same terms, as set forth in that certain lease dated September 24, 1937, and signed Wilharbla Realty Company, by William H. Black, lessors, as full payment for said fifty-one shares of stock, and agree at the first meeting of the corporation to vote their stock to the effect that Mrs. Rose Herrington will be appointed residential manager, at a salary of not less than one hundred twenty-five ($125) dollars per month and provided for the use of one sleep-

ing-room, as selected by the second party and the room next to the office on the ground floor of said building. . . It is further agreed that pending the formation of the corporation as above set forth, that the hotels shall be operated as though it was formed and effective of September 15, 1937; receipts and disbursements, of all kinds, rents etc., to be accounted and tabulated as of that date and monies advanced by H. Gilbert for the first month's rent under the terms of the lease, deposits, equipment, etc., shall be reimbursed and paid him from receipts of the hotel, as available for that purpose, said advances being in the form of loans, to the said business. . .

"It is further understood and agreed between the parties, that the interest in the said lease and business as delivered, to the parties of the first part and to any furnishings and equipment, purchased since October 15, or hereafter purchased for the benefit of said business, subject to the payment for said furnishings and equipment, represents the entire assets of the business as herein set forth and includes for the party of the second part, the position of residential manager the duties of which is to perform the duties of housekeeper of the day clerk and all managerial duties necessary for the successful operation of said business and that in event the party of the second part should sell her interest in this contract, or sign her shares in the corporation which will represent her interest in the contract when issued, shall carry with it the position herein described and agreed to, for the party of the second part to perform, providing that the purchaser of her interest and/or shares, have the qualifications, personality and habits, essential for the operation of the business and satisfactory to the first party."

This contract was relevant and material on the question whether the plaintiff operated as a corporation after the charter was granted and accepted. The same is true as to the following question to Mr. Gilbert and his answer thereto: "Q. Now, I will ask you, Mr. Gilbert, if you proceeded—after this lease was signed, did you proceed to operate this as a Georgia corporation? A. We proceeded to operate it just as if a corporation was formed." The same is true as to the following question to Mrs. Herrington and her answer thereto: "Q. Mrs. Herrington, the question when we adjourned a moment ago was about when the meeting took place in April, when you accepted the charter of the hotel. Now, I want

to ask you with reference to any assignment of the lease to the corporation, what took place? A. We assigned the lease to the corporation verbally." The same is true as to the following question to Mrs. Timmerman and her answer thereto: "Q. Did you treat your business as a corporation, as if it had been formed? A. Yes."

The court also erred in excluding from evidence statement of Mrs. Herrington that at a meeting in April, 1939, the lease in question was "verbally" transferred to Gilbert Hotel No. 22 Inc., and in excluding her statement that the association had been "treated" as a corporation.

There is no merit in any other special assignment of error. · It follows from what is said hereinbefore that the court erred in granting a nonsuit.

After the opinion of this court was rendered and the judgment of the trial court reversed for reasons stated in the opinion, the plaintiff in error filed a motion for rehearing. Upon a consideration of the motion this court changed its former rulings in certain respects, and the opinion has 'in part been rewritten to conform thereto. The judgment of reversal is adhered to.

<em>Judgment reversed. Stephens, P. J., concurs.</em>

SUTTON, J. I dissent from the rulings of the majority of the court as hereinafter discussed, and from the judgment of reversal, for the following reasons:

█ Under the terms of the contract the lease could not be assigned or sublet to other than a corporation organized by the Gilberts, nor could the Gilberts sublet the premises or any part thereof without the written consent of the lessor. Admittedly no such consent was given. The defendants can not be said to have substituted the plaintiff as a tenant even if "Gilbert Hotel No. 22 Inc." was in possession of and rents were accepted from a third party during such possession. If such remittances were made by the original lessees, Hubert Gilbert and Earline Gilbert, the acceptance of such rent is not an affirmative action on the part of the landlord as to amount to an election by him to treat as his tenant a subtenant of the former. As was said in *Cuesta* v. *Goldsmith*, 1 *Ga. App.* 48, 50 (57 S. E. 983) : "In order for the relation of landlord and tenant to exist between the owner of the property and a subtenant, some affirmative action must be had by the landlord show-

ing that he elected to treat the subtenant as his tenant. It is not sufficient that the landlord has knowledge and makes no objection. As an instance, it may readily be seen that the owner of a storehouse may be unwilling to rent the house to A, on account, say, of his insolvency, but is entirely willing to rent it to B, who is a friend or relative of A, and does so. Without having obtained the consent of the landlord, B sublets it to A and puts him in possession for B's term. The landlord, with a knowledge of the fact that A is occupying his store, makes no objection, but does not elect to treat him as a tenant, preferring to hold B. It can not be said that the owner of the premises occupies the relation of landlord to A because he knew of the occupancy of the latter of his house." See also *Americus Mfg. Co.* v. *Hightower,* 3 *Ga. App.* 65 (59 S. E. 309); *Hooks* v. *Bailey,* 5 *Ga. App.* 211 (62 S. E. 1054); *Hudson* v. *Stewart,* 110 *Ga.* 37 (35 S. E. 178). The defendant here resides in New York, and there was no evidence that he even knew that a corporation was purporting to operate, as assignee, the hotel as "Gilbert Hotel No. 22 Inc." Checks for rentals were sent to him in New York by Gilbert System Hotels, a corporation, Jacksonville, Florida, indicating that they were in payment of rent for a "Gilbert" hotel at 73 and 75 Pryor Street, Atlanta, Georgia, but there were many such hotels, constituting a chain, which were supervised by the Gilbert System Hotels corporation. But even if the checks had indicated that the rents were paid for a corporation, Gilbert Hotel No. 22 Inc., the acceptance of the rents would not, under the above-cited authorities, conclude the defendant as having elected to treat the latter corporation as his tenant. In this situation it was subject to summary dispossession at the pleasure of the defendant, and can not complain that the dispossessory warrant proceeding against Gilbert System Hotels, a corporation, was improperly brought. *Bass* v. *West,* 110 *Ga.* 698, 705 (36 S. E. 244). The majority opinion points out that no demand was made on Gilbert Hotel No. 22 Inc. for possession before the dispossessory warrant proceeding was instituted, and that, therefore, it was not subject to eviction at that time. This is not a case where a demand would be necessary. It is an instance of a mere intruder, in so far as tenancy may be claimed, and it does not appear that Gilbert Hotel No. 22 Inc. was ever recognized by Black. Rents were, as hereinbefore stated, sent from

Jacksonville by Gilbert System Hotels without reference to "Gilbert Hotel No. 22 Inc." Black instituted the dispossessory proceeding against Gilbert System Hotels, Rose Herrington, agent-manager, and Mrs. Rose Herrington, as defendants in possession of the premises in question, but not against Gilbert Hotel No. 22 Inc. If, incident to the execution of the proceeding, Gilbert Hotel No. 22 Inc. was evicted, it was not evicted as a *tenant* entitled to a demand for the premises before eviction and can not complain, Black having the right to dispossess it summarily as an intruder.

But while the plaintiff can not, in my opinion, maintain the action for wrongful eviction, it might, if a de jure or a de facto corporation, recover for a trespass committed by the defendant as respects the personal property owned by it in the hotel. I dissent from the rulings of the majority of the court that the evidence shows Gilbert Hotel No. 22 to have been a de facto corporation, and also dissent from the rulings on the admissibility of certain evidence hereinafter discussed.

While Mrs. Herrington took possession of the hotel in October, 1937, there was no charter issued to Gilbert Hotel No. 22 Inc. until April 18, 1939. Manifestly any personal property placed in the hotel by her or any one else in 1937 was not the property of such a corporation, and she could not at that time have been an agent of an unchartered corporation. The evidence shows conclusively, in my opinion, that before any charter was obtained by the alleged corporation the Neon sign was purchased by Hubert Gilbert in 1937, and the mattresses, blankets, curtains, and wastepaper baskets were procured by Mrs. Herrington. According to her own testimony she is still paying for some of the merchandise under a contract of purchase. There is no evidence that "Gilbert Hotel No. 22 Inc." bought any of the merchandise or that title thereto was transferred to it after its incorporation. No attempt was made to prove the amount of accounts receivable except by a certain "daily transcript" which was a sort of recapitulation of guests' accounts. This was properly rejected by the court as not being an original book of entry. There was testimony that more than $70 was on hand when the defendant's agent, W. M. Mabson, took charge of the premises, and a clerk in the hotel, acting under Mrs. Herrington, turned over to him the cash on hand. Did it belong to Gilbert Hotel No. 22 Inc.? Not unless there existed

such an entity, either as a de jure or de facto corporation, and the money had come into his hands through operation of the hotel.

The charter was issued to Gilbert Hotel No. 22 Inc. on April 18, 1939, nearly two years after Mrs. Herrington took charge. The application for charter stated: "The maximum capital stock of said corporation shall be six thousand ($6000) dollars, which shall be represented by one hundred (100) shares no-par value stock, but the minimum capital with which the corporation shall begin business is one thousand ($1000) dollars." The Code, § 22-804, provides that "Before any such corporation [non-par stock corporation] can begin business as a corporation there must be at least $1000 paid in for such non-par value common stock either in cash or in tangible assets at their fairly appraised valuation," and it will be noted that the charter itself so provides. There was testimony that informally, without any record by minutes, Hubert Gilbert and Earline Gilbert met with Mrs. Herrington in the room of the latter and verbally "accepted" the charter, but the evidence does not show that any portion of the capital stock was actually paid in, either in money or in tangible assets. Obviously, the Gilbert Hotel No. 22 Inc. never became in fact a corporation de jure.

Did it become a corporation de facto? "A corporation is a de facto corporation where there is a law authorizing such a corporation, and where the company has made an effort to organize under the law, and is transacting business in the corporate name." *Wright Co.* v. *Saul,* 31 *Ga. App.* 129 (1) (120 S. E. 23). See also *Georgia Southern & Fla. R. Co.* v. *Mercantile Trust & Deposit Co.,* 94 *Ga.* 306, 316 (supra) ; *Brown* v. *Atlanta Railway Co.,* 113 *Ga.* 462, 468 (39 S. E. 71) ; *Brooke* v. *Day,* 129 *Ga.* 694, 696 (59 S. E. 769). "User of corporate powers may be shown by proof that the association elected officers or held meetings as a corporate body, that it maintained an office, or that it transacted business in a way which imports that it was acting as a corporation. User may be proved either by the production of written instruments executed by the corporation, or its records and books showing corporate meetings, or other corporate acts, or by parol evidence of corporate powers." 8 Fletcher Cyclopedia Corporations, 601, § 4142. See also *Ward-Truitt Co.* v. *Bryan,* 144 *Ga.* 769 (87 S. E. 1037). It is clear that no de facto corporation as Gilbert Hotel

No. 22 Inc.·is shown by the evidence. When Mrs. Herrington took possession of the hotel in 1937 she certainly was not acting for such a corporation. Its charter was not issued until April 18, 1939. There was some testimony that an informal meeting was held in her room and the charter "accepted," though no minutes were made, and that Hubert Gilbert became president and Mrs. Herrington secretary and treasurer, but there is a total lack of evidence of user of the franchise as a corporation in the operation of a hotel. It necessarily follows that no claim, in the name of such an alleged corporation, can be upheld as to any personal property said to have been seized in the hotel by the defendant. *Burns* v. *Beck,* 83 *Ga.* 471, and *Howard* v. *Long,* 142 *Ga.* 789 (supra), are not contrary to and do not require any ruling different from what is said above.

I dissent from the rulings of the majority of the court upon the following assignments of error: The court properly excluded an agreement entered into between the Gilberts and Mrs. Herrington in 1937 wherein it was recited that she had paid to them $3000 and that they would form a corporation, Gilbert Hotel No. 22 Inc., for the operation of a hotel under a lease which had been executed to the Gilberts by the defendant, and of which hotel she was to be 'manager at a stated salary etc. This written agreement was not in any way illustrative of an actual user of a corporate franchise, and was not binding on the defendant whose written consent was requisite to the assignment of the lease and which the evidence shows not to have been obtained. It constituted only an agreement between individuals, and was not for any reason urged by the plaintiff relevant to any issue in the case. The court did not err in excluding from evidence statement from Mrs. Herrington that at a meeting in April, 1939, the lease in question was· "verbally" transferred to Gilbert Hotel No. 22 Inc. or in excluding her statement that the association had been "treated" as a corporation, such statement being only a conclusion. Neither did the court err in excluding an answer from Hubert Gilbert as to the dates when certain payments were made by Gilbert System Hotels to the defendant, the checks themselves being the best evidence. Furthermore, the payments would not of themselves show an election by the defendant, as already pointed out, to accept the Gilbert Hotel No. 22 Inc. as his tenant. The statement of Hubert Gilbert that

the hotel was operated as a corporation was likewise objectionable as being only a conclusion. Actual user is necessary to be shown, and such facts do not appear here.

No error of law appears, and it not being shown that the plaintiff had a right to maintain the suit for eviction or for trespass to the personal property in question, I am of the opinion that the trial court properly awarded a nonsuit and think that the judgment should be affirmed.