JOHN BAUER ET AL., APPELLANTS, v. EDWARD WHITE ET AL., RESPONDENTS.*—29 S. W. (2d) 176.

Kansas City Court of Appeals. June 16, 1930.

*Wilkinson & Wilkinson* and *Frank Lee Wilkinson* for appellants.

*Henry S. Julian* for respondents.

BLAND, J.—This is an action in unlawful detainer. The case was tried before the court without the aid of a jury. The court rendered a judgment containing a special finding of facts but thereafter set aside the judgment containing said finding, made a finding of "not guilty" and rendered judgment in favor of defendants. Plaintiffs have appealed. There was no finding of facts or declaration of law requested or given and, under the circumstances, if the judgment can be upheld upon any theory it is necessary for us to sustain it. [Weber Engine Co. v. Lehrach, 262 S. W. 45.]

The facts taken in their most favorable light to defendants are as follows: Plaintiffs owned a combined residence and business building in Kansas City, the store building being on the ground floor and an apartment, consisting of five rooms and a bath, with a separate entrance in the rear, on the upper floor. Connected with the property was a garage.

On May 14, 1928, plaintiffs entered into a written lease of the property with one Beatrice Snyder. While the garage was not mentioned in the lease Mrs. Snyder and the subsequent tenants were permitted to use it without paying additional rent. The lease was for a period of two years beginning June 1, 1928. The rental reserved was $40 per month, payable on the first of each month in advance. In the lease the lessee agreed to keep the premises in repair and

"To not sublet or allow any other tenant to come in with or under him or assign this lease or any part thereof by his act, process of operation of law, or in any other manner whatsoever without the written consent of the lessor indorsed on this lease."

On the back of the lease was the following:

"Assignment of Lessee.

"Subject to the consent of the lessor I hereby assign and transfer to .................., all my right, title and interest in the within

lease, and said assignee hereby assumes and agrees to pay rent provided for in said lease.

"Dated at .......... this .......... day of .........., 192....

...........................................

...........................................

"I hereby consent to the above assignment of within lease.

........................................,

........................................ "

Mrs. Snyder, the lessee, moved into the property and opened up a bakery therein. She paid the rent up to January 1, 1929. About Christmas time in 1928 she called upon the plaintiff, John Bauer, who evidently acted, in all of the transactions involved herein, as agent of the plaintiff, Thresia Bauer, as well as for himself. At this meeting Mrs. Snyder told Bauer that she desired "to get out of business" and asked him "if it was agreeable with him for me to assign the lease over to Mr. Maddox." Bauer replied "it was." She sold the business to Maddox and having a duplicate copy of the lease she indorsed the same in blank, signing her name on the first blank line for signature in the blank form of the assignment on the back of the lease. Maddox did not sign on the second line, nor was his name signed anywhere upon the lease, nor inserted in the assignment. Mrs. Snyder delivered the lease to Maddox but plaintiffs did not at any time agree *in writing* to the assignment of the lease to him or anyone else. Maddox entered into the property and was there about two weeks when he sold the business to one Middleton. Nothing was written upon the lease when the sale was made to Middleton, but Maddox delivered the lease, with the existing indorsements thereon, to Middleton at the time he sold out to the latter, saying to him:

"Mr. Bauer had told Mrs. Snyder it would be all right for me to take it over and 'I suppose it will be all right for you to take it.' "

Maddox and Middleton did not take up with Bauer the matter of the assignment at the time of the sale to Middleton.

Bauer testified that he did not know whether Maddox had accepted the lease and entered into the business or not, but on the next rent paying time, which was the first or second of January, 1929, Middleton came to him and said that he was "running the place," but that the witness did not know whether Middleton was running the place for himself or some one else; that the witness was "looking for a man by the name of Maddox," as Mrs. Snyder had said she had sold to a man of that name; that the witness desired that whoever was to take the property should sign the lease and he expected Mrs. Snyder and Maddox to come to see him with the request that he assign the lease to Maddox. How-

ever, at the first interview that the witness had with Middleton the latter paid the rent with his own check. The witness at this time did not request Middleton to sign the lease because he did not know whether or not the latter was the proprietor of the place or operating it for some one else. Later Mrs. Snyder called the witness over the telephone and told him that she believed Middleton was taking the lease. The next time the witness saw Middleton he told him what Mrs. Snyder had said and Middleton stated that "he couldn't and wouldn't take the lease." The witness asked him several times thereafter "to take it" but Middleton refused to sign it but paid the rent for February and March.

The witness further testified that on the 23rd of April the rent had not been paid. He went to the store to ask Middleton the reason for this. Middleton was not there but the man who was working there said that Middleton had been gone more than three weeks, and a man by the name of Maddox "has the place." The witness then had Otto Schmidt call Maddox over the telephone. Mr. Schmidt reported to the witness that Maddox stated that he would pay the rent and that he would send a check for it the next day. The witness received a check from Maddox through the mail and in the early part of May he again received a check for the rent signed by Maddox. The witness did not at any time see Maddox personally until the latter and the defendant, Edward White, came to see him about White's buying out Maddox. White came to see Bauer about the 8th or 9th of May in regard to buying out Maddox and obtaining the consent of the witness to the assignment of the lease to White. The witness admitted that he verbally consented to the transfer.

White testified that at the time he saw Bauer in May he "had a deal" with Maddox in reference to buying out the latter, but before consummating the transaction he saw Bauer about getting the latter's consent to the assignment of the lease, and asked him if he would make certain repairs on the inside of the store building. Bauer agreed to do this and some painting but refused to do anything else. This was satisfactory to White and the next day he and Maddox called upon Bauer, taking with them Mrs. Snyder's copy of the lease which White had procured from Maddox, and Bauer verbally consented to the assignment from Maddox to White. White handed Bauer the lease and asked him to sign it at the proper place but Bauer did not comply with this request, saying "I will get my copy from the bank and sign both copies together." White further testified that he did not see any object in Bauer signing both copies together and paid no further attention to it and did not obtain Bauer's signature; that "so long as he had accepted me as a tenant under this lease that was all that

I was interested in." There after he consummated the purchase with Maddox and went into possession of the premises and paid Bauer the rent, White and his wife operating the business together. When Maddox sold to White, and apparently when Middleton sold to Maddox, nothing was written upon the lease in the way of a signature or otherwise, but it was delivered by the seller to the buyer with the blank assignment of Mrs. Snyder upon it.

During July, 1929, White had a proposition from one Hanauer to buy the store. Hanauer finally offered White a bonus of $150 for the lease, provided the former could get an extension of the lease from Bauer. Hanauer saw Bauer and reported to White that "Mr. Bauer says you haven't any lease and won't let me make this deal with you." So the deal fell through. Bauer, either before or after Hanauer saw him, heard of the negotiations between Hanauer and White and went to the store to interview White in reference to the matter. Bauer testified that he said to White: " 'I understand you were going to go. I thought you had a lease.' Mr. White said, 'I couldn't stay here.' Mrs. White was sick and they couldn't stay here.' " White said, "Let me sell out so I can have my investment." Bauer told White he could "move over in the next block and sell out;" that "I give you the benefit and he (Hanauer) give you $100."

On July 31, 1929, Bauer served notice upon White to vacate the premises on September 1, 1929. White testified that the night before Bauer served this notice upon the witness the latter was at the store claiming that the defendants did not have any lease. The witness then said, "we have." Bauer stated, "you never have signed it." The witness replied "there is nothing there for me to sign." The witness testified that he would have been willing to have signed a lease "because he was making every effort to keep the place" but he maintained to Bauer that he already had a lease and he had not signed it because there was no place upon the lease for him to sign. He afterwards told plaintiffs' attorney that he would not make any other lease "than the one we had." He did not recall that he was ever requested to sign the lease in question. Bauer testified that he requested White on several occasions to sign the lease, the last request being on September 1, 1929, and White failed and refused to sign it.

On October 11th, plaintiffs caused notice to be served upon defendants demanding possession of the building containing the store room but defendants failed or refused to render up possession of the premises and tendered the rent for the month of September, which Bauer refused. No rent was tendered thereafter. The furniture and fixtures were moved out of the premises on or about October 26, 1929, and plaintiffs took possession of the vacant

property on December 1st. White has retained the keys to the property. This suit for unlawful detainer was brought on October 14, 1929.

It is the theory of plaintiffs that defendants were in possession of the building containing the store room as plaintiffs' tenants from month to month. On the other hand, it is defendants' contention that they were tenants as assignees of the written lease between plaintiffs and Mrs. Snyder and that the lease not having expired at the time this suit was brought the action cannot be maintained. The question presented is whether there was any testimony tending to uphold defendants' contention that they were assignees of the lease. Plaintiffs rely upon the month to month statute, Section 6880, Revised Statutes 1919, providing among other things, that all agreements for the leasing, renting or occupation of stores, houses, etc., in cities, towns or villages, not made in writing, signed by the parties thereto, or their agents, shall be taken as tenancies from month to month, and such tenancies may be terminated by either party by the giving of thirty days' notice of his intention to terminate the same.

We think that the question as to whether or not defendants were tenants from month to month or assignees under the lease was at least one for the court sitting as a jury, even if it can be said that there is any testimony whatever in the record tending to show to the contrary.

While it is true that Bauer did not know whether Maddox or Middleton was the original assignee of Mrs. Snyder at the time he accepted the first rent from Middleton, while as a matter of fact Maddox was the assignee, we think that this circumstance does not make any material difference in the determination of the question now before us. Assuming that Bauer had not already waived the clause against assignment of the lease without his written consent he, when the assignee refused to sign the assignment provision on the back of the lease, had the option of doing one of two things, he could have either forfeited the lease or waived the forfeiture. [Jackson v. Knight, 194 S. W. 844, 848.]

''The assignment of a lease without the lessor's consent when that is required by the terms of the lease, does not make the transfer void, but voidable only at the election of the lessor. If the lessor chooses to avail himself of the breach he can only do so by re-entry, as provided by the lease, or by pursuing such other legal remedy as the right of re-entry confers.'' [1 McAdam on Landlord and Tenant (4 Ed.), pp. 866, 867.]

The evidence is undisputed that Bauer did not undertake to forfeit the lease; that he wanted the assignee, whoever he was, to sign the assignment clause on the back of the lease and failing to

obtain this he accepted the rent notwithstanding. There is no question but that the provision of the lease requiring his written consent to the assignment was, by this conduct, waived as well as the forfeiture. [Tyler v. Geisler, 74 Mo. App. 543; Demeris v. Thompson, 215 Mo. App. 404; 2 McAdam on Landlord and Tenant (4 Ed.), p. 865; Darmstaetter v. Hoffman, 120 Mich. 48, 50; 35 C. J., pp. 986, 987.] It is true that his agreement with Mrs. Snyder was that she might assign the lease to Maddox, but his accepting the rent without ascertaining whether or not the assignment had actually been made to Maddox or to Middleton shows that he was not interested whether the one or the other was to become his tenant. He therefore, waived the right to forfeit in favor of whoever was the assignee.

There is nothing to show that Mrs. Snyder surrendered the lease and that such surrender was accepted by Bauer or that the parties abandoned the lease. The evidence is to the contrary. Bauer at no time said anything about forfeiting the lease on account of its assignment without his consent, but on the other hand he wanted the lease signed by the new tenant and seemed very willing to accept rent from Middleton for the month of January, when Middleton tendered it. Under such circumstances there is no question but that Bauer waived his right to object to Middleton, or whoever his tenant was, by accepting the rent and that such tenant became the tenant of plaintiffs under the assignment of the lease.

The fact that Middleton thereafter refused to sign the indorsement on the back assuming and agreeing to pay the rent provided in the lease would not change the situation in the least. In the first place, although the lease itself did not require the signature of the assignee and therefore none was necessary (35 C. J., p. 993), Bauer no doubt could have required the assignee to sign his name to the assignment of the lease before attaching his own name to the assignment agreeing to it. However, he made no such requirement but accepted from Middleton the rent for February and March and thereby waived (had he not already done so) the provision of the lease requiring his written consent to its assignment. In the second place Middleton was absolutely bound to pay the rent for the balance of the term so long as he owned the leasehold and occupied the premises. [Tyler v. Geisler, 85 Mo. App. 278, 282; 36 C. J., p. 315.] He could not have abandoned the premises. [35 C. J., p. 998.] We assume that at the time Middleton refused "to take the lease" Maddox had orally assigned the lease to him and delivered the written lease containing the blank assignment of Mrs. Snyder, for at that time Middleton was paying the rent and the undisputed evidence shows that Maddox, two

weeks after he purchased from Mrs. Snyder, sold out to Middleton and turned over to him the lease.

There is no question that when Mrs. Snyder's assignee accepted the assignment and went into possession of the premises and began paying the rent reserved in the lease he was absolutely bound to pay the rent subsequently accruing under the lease until he re-assigned the lease, even though the original assignment was not in writing. [Ins. Co. v. C. & A. Ry. Co., 74 Mo. App. 89; Carter v. Hammett, 12 Barb. 253.] Bauer was likewise bound to recognize the assignee's tenancy even though he did not consent in writing to the assignment. [Ins. Co. v. C. & A. Ry. Co., supra.]

The Statute of Frauds is inapplicable for it is well established that if both parties to a contract waive the requirements of the statute and carry the contract into execution, a third person cannot he heard to question its effect. [Roth Tool Co. v. Champ Spg. Co., 93 Mo. App. 530, 537.] Therefore, the fact that the assignment between Mrs. Snyder and Maddox, or whoever the assignee might be (Bauer not knowing or apparently not caring whether it was Maddox or Middleton), was not in writing was no affair of Bauer's, as far as is concerned the validity of the assignment as between Maddox and Middleton, and Middleton's statement that he would not "take the lease" had no effect upon the situation. He had already become bound as an assignee under the lease, as far as the assignment from Maddox to Middleton, as well as the consent of Bauer, was concerned.

When Mrs. Snyder's assignee assigned his interest as tenant under the lease and plaintiffs accepted the rent from the assignee no privity of contract between plaintiffs and the assignee under the reassignment was created, but merely privity of estate. We need not pass upon the question as to whether the clause of the lease, providing against an assignment without the written consent of the lessor, was waived, in favor of all the subsequent assignees, for under the circumstances the assignees under any of the reassignments were not bound by the terms of the lease against an assignment without the written consent of plaintiffs. They were bound only by such covenants in the lease as ran with the land. [Weigle v. Rogers, 202 Mo. App. 520; McAdam on Landlord and Tenant (4 Ed.), p. 865.]

"It is important to the lessor to secure from the assignee of a lease, when possible, an express contract or covenant on his part *to pay the rent and perform the other covenants of the lease.* This can be readily secured when the lease requires the lessor's consent to any assignment, by inserting an express agreement to that effect in the assignment itself. Without such covenant the assignee is liable only by virtue of privity of estate, and he can, therefore,

relieve himself of all liability by at any time assigning the lease; and he may assign to a man of straw for the purpose of escaping liability." [1 McAdam on Landlord and Tenant (4 Ed.), p. 869.] (Italics ours.) [See, also, Tyler v. Geisler, supra, 74 Mo. App. 543, 549; Weigle v. Rogers, supra; 35 C. J., pp. 998, 999; Sayles v. Kerr, 38 N. Y. S. 880; Tyler v. Geisler, supra, 85 Mo. App. 278.]

It therefore, makes no difference whether or not plaintiffs agreed to the' assignment from Maddox to defendants and, therefore, whether that agreement, if any, was conditional, there being some testimony tending to show that Bauer told White he would agree to the written assignment if White would put his signature upon the assignment upon the back of the lease. Even if the provision in the lease, requiring lessors' written consent to the assignment, had any application as to the assignment from Maddox to White, it would have been clearly waived by the continued acceptance of the rent by plaintiffs from defendants. [See authorities, supra.]

Bauer testified that after he told White that he would get the witness' copy of the lease from the bank and that the two should sign each other's copy, the witness waited a few days expecting White to come back and sign the assignment but that the latter failed to do so; that after White had paid the rent, while the witness was away from home, he called upon White and asked him to sign the assignment upon the lease and inquired of him why he had not kept his appointment; that White said that the business was misrepresented to him; "there is not as much money in making pies as I thought there was," but that if Bauer would decorate the store and "fix up the platform in front . . . which was torn out by Mr. Middleton," and would let him have the garage rent free, he would sign the lease. The witness did all of these things but afterwards White refused to sign.

From what we have said White was already a tenant as an assignee under the lease at the time these demands were made upon Bauer, if they were, and White was under obligation to pay the rent provided for in the lease as long as he remained as the tenant. This circumstance, together with the statement of Middleton after he paid the first month's rent that he would not "take the lease," is pointed to by plaintiffs as tending to support their theory that the tenancy was from month to month, because Middleton and especially White would not agree to take under the lease. However, as before stated, White and Middleton, when they made these statements, were already obligated to pay the rent reserved in the lease until the lease expired or they assigned it. The matter of a month to month tenancy was never mentioned by any of the parties. All of the assignees of the lease paid the amount of rent reserved in the lease without any effort being made to agree upon

a rental of any kind and there is no question but that the parties were all. tenants under the lease and not tenants from month to month. As before stated, if Bauer desired to cancel the lease and rent on a month to month basis he should have forfeited the lease by re-entering the premises or by pursuing such other remedy as the right of re-entry confers, and not insist upon the tenants signing the assignment before recognizing their tenancy as assignees under the lease in one breath and accepting rent as though they were such tenants in another. Having done nothing looking toward a forfeiture of the lease but on the other hand insisting that the tenants sign the assignment of the lease, thus recognizing the existence of the lease, he, cannot say that there arose, under the provisions of Section 6880, Revised Statutes 1919, a tenancy from month to month and that his acceptance of the rent can be attributed to his right to it under such a tenancy.

Plaintiffs contend that as the lease provided that the tenants do the repairing White, under the terms of the lease, has no right to demand that the premises be redecorated and changed or that he be permitted to use the garage, rent free. From this plaintiffs contend that the parties were not operating under the lease. However, the compliance with these demands by Bauer was for the purpose, according to Bauer's testimony, of getting White to sign the written assignment, which Bauer thought would be (and no doubt it would have been) of some protection to him and not upon the theory that the tenancy was upon a month to month basis and, therefore, White was privileged to make any demand he saw fit on condition that he become or continue a tenant.

Assuming, but not deciding, that White was bound by the provision of the lease requiring the tenant to repair yet he had no advantage when it came to this matter. Bauer was anxious to have White sign the lease and was willing to make the repairs in question to attain this end. It will be remembered that White could have assigned to a straw man, or one wholly unacceptable to Bauer and thus escaped liability for subsequent rent, had the latter refused to make the repairs. There was nothing inconsistent in the assignees refusing to sign the assignment provision on the back of the lease and at the same time claiming to be tenants as such assignees. From what we have said the liabilities of the assignees would have been enlarged, or their rights restricted, by their agreeing to the assignment clause providing that they pay rent for the remainder of the term. After White refused to sign the assignment Bauer continued to accept rent from him without attempting to terminate the tenancy of White under the lease or say anything about a rental on a month to month basis.

However, as before stated Bauer's rights were waived when he agreed to the first assignment and accepted rent from the assignee. Thereafter he was privileged to make terms, if possible, with subsequent assignees but he had no control of the matter as to whom should become such an assignee or a subsequent tenant. Therefore, his demands that the subsequent tenants sign the written assignment has no material bearing upon the situation. They were entitled to go into possession of the premises and to remain therein to the end of the term provided in the lease so long as they discharged their duties as tenants. Therefore, plaintiffs on July 31, 1929, had no right to pursue the theory that defendants were tenants from month to month and this suit cannot be maintained.

Some complaint is made in reference to the ruling of the court upon the admissibility of testimony but without going into the matter further it will appear, from what we have said, that the action of the court in this regard was correct, although ordinarily the matter of the admission of testimony is not important in a trial before the court. [Cornice & Roofing Co. v. Trust Co., 146 Mo. App. 36, 57.]

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.