**OXFORD MALL COMPANY, Plaintiff,**

v.

**K & B MISSISSIPPI CORPORATION, Defendant and Counterclaimant,**

v.

**OXFORD MALL, Herring Marathon Group, Inc., M.G. Herring, David Strautz, Edna Grayson, Herman Mitchell, Nick Robbins, William Fuller, Andy Ibsen, John Rowland, Howard Brown and Warren Smith, Counterdefendants.**

**Civ. A. No. J89–0568(L).**

United States District Court, S.D. Mississippi, Jackson Division.

May 14, 1990.

Thomas W. Tardy, III and Barry S. Zirulnik, Jackson, Miss., for plaintiff.

Robert H. Weaver and W. Whitaker Rayner, Jackson, Miss., for defendant and counterclaimant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

Oxford Mall Corporation (OMC), a Texas partnership, brought this action against K & B Mississippi Corporation (K & B) seeking recovery of unpaid rent alleged to be owed by K & B pursuant to a lease agreement between OMC and K & B for the lease of space in the Oxford Mall shopping center located in Oxford, Mississippi. In its answer, K & B denied that rent was due, and additionally asserted a counterclaim against OMC and its managing agent, Herring Marathon Group, Inc., and against a number of individuals, each of whom was formerly a general partner in

OMC. K & B's counterclaim alleged that its lease agreement with the counter-defendants granted it the exclusive right to operate a pharmacy in the shopping center and that the counter-defendants breached the lease by permitting WalMart to operate a pharmaceutical counter in its store in the Oxford Mall shopping center. The counterclaim is set forth in six counts, charging breach of covenant, breach of warranty, breach of warranty of title, breach of express covenant, negligent misrepresentation and fraud. As against the individual counter-defendants, the complaint does not allege any specific wrongdoing by any particular individual or individuals but rather alleges that "[a]s general partners in OMC, the Individual Counter–Defendants are jointly and severally liable for the debts and obligations of OMC and are proper parties to this Counterclaim."

This case is now before the court on the motion of the individual counter-defendants to dismiss the counterclaim. In support of their claim for dismissal, they contend that this court has no personal jurisdiction over them and alternatively, they seek dismissal for failure of the counterclaim to state a claim upon which relief may be granted.[1] It is undisputed that while each of the counter-defendants is a former partner in OMC, none is currently a partner. The uncontroverted proof demonstrates that nine of the ten counter-defendants—M. G. Herring, David Stautz, Edna Grayson, Herman Mitchell, Nick Robbins, William Fuller, Andy Ibsen, John Rowland and Warren Smith—were OMC partners when the lease was executed with K & B in 1983. Only one of those persons, M. G. Herring, was admittedly a partner when the WalMart pharmacy was opened in October 1986, the date of the alleged breach; subsequently, in 1989, Herring withdrew from the OMC partnership. Howard Brown, the remaining counter-defendant, asserts that he became a partner in March of 1984 and with-

1. A basis for dismissal raised by certain of the counter-defendants was a lack of service of process. In response to the motion, K & B recognized the failure of process and has represented that it has now properly served each defendant with process. In their rebuttal, defendants do not indicate that they wish to proceed with their motion on service of process grounds and accordingly, the court considers that service has been properly effectuated and the objection to service has thereby been rendered moot.

drew from the partnership in October 1985 such that he was not a partner when the lease was executed, nor when the lease was allegedly breached, and he is not a partner now. Brown's claim as to the duration of his tenure as an OMC partner is challenged by K & B. That issue will be addressed *infra.*

## JURISDICTION

The court observes initially that pursuant to Miss.Code Ann. § 13–3–55, "[a] partnership may sue or be sued in the partnership name, or in the names of the individuals composing the partnership, or both...." While this suit was initiated by OMC in the name of the partnership, K & B has elected to name as defendants both the partnership as well as the former individual partners.[2] As to the partnership, there is no question but that OMC entered into a contract with K & B, and that contract was to be performed in whole or in part in the state of Mississippi. Under Mississippi's long-arm statute, Miss.Code Ann. § 13–3–57 (Supp.1989),[3] that conduct renders OMC amenable to jurisdiction in a Mississippi forum and, indeed, neither OMC nor any other party has challenged the court's ability to exercise jurisdiction over the partnership. The dispute here, according to the parties, concerns only whether there exists personal jurisdiction over the individual counter-defendants. However, the distinction is for jurisdictional purposes of no practical significance.

■ The court's analysis begins with the premise that the partnership clearly performed acts sufficient to subject it to jurisdiction in Mississippi. As to the individual counter-defendants, from a jurisdictional standpoint, what is relevant is not whether each of them personally performed acts which would subject them to jurisdiction in Mississippi but rather, what is relevant is their relationship to one another and hence to the partnership. This is because an agent of a partnership may, by his actions, subject the general partners to the jurisdiction of states where the agent acts. *Felicia, Ltd. v. Gulf American Barge, Ltd.,* 555 F.Supp. 801, 806 (N.D.Ill.1983) (making of contract by general partner sufficient to confer jurisdiction over partners). In *Felicia, Ltd.,* the court made the observation that

> [g]eneral partners as well as partnership employees or agents are agents for all other general partners. Accordingly, the ... contacts that bring [the partnership] into court equally support the assertion of personal jurisdiction over each of its general partners.
>
> .    .    .    .    .
>
> These fundamental agency concepts are unaffected by [a statute] which simply offers the procedural choice of suing a partnership in its firm name or suing the individual partners.

*Id.* at 806. General partners are not only agents of all other partners and hence of the partnership, but are principals as well. As agents, they represent the partnership; as principals, they are the partnership. *Id.; see also* 68 C.J.S. Partnership § 136 (basis of liability of partners is fact they are principals in any and every transaction).

■ In this case, regardless of their status at the time the alleged breach occurred, these individuals constituted the partnership when the lease was executed. The contract was the undertaking of the partnership, comprised of the individual partners. Furthermore, it is that contract which forms the basis of K & B's counterclaim. Consequently, the partnership as well as the individual partners are amenable to the court's *in personam* jurisdiction under the long-arm statute so long as the

---

**2.** No proof has been presented as to the current composition of the partnership.

**3.** Mississippi's long-arm statute provides that "any non-resident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state ... shall by such act or acts be deemed as doing business in Mississippi," and shall by such act or acts be deemed to have appointed the Secretary of State of the State of Mississippi as its agent for service of process for actions arising from or growing out of such contract.

exercise of jurisdiction would not offend their right of due process.

In order to satisfy due process requirements, of course, it is essential to demonstrate "minimum contacts" between the nonresident and the forum state. However, and despite the counter-defendants' argument to the contrary, for a finding that there exists "specific jurisdiction," it is required only that there be a nexus between the activities of the nonresident counter-defendants and the cause of action alleged; a single contact will suffice. It is not necessary that the contacts be of a "systematic and continuous nature," as would be the case if there were no nexus and a "general" jurisdiction analysis were applied. *Applewhite v. Metro Aviation, Inc.*, 875 F.2d 491, 495 n. 3 (5th Cir.1989). Given that the subject of the contract entered by the partnership (and hence these counter-defendants) was for the lease of property located in the state of Mississippi —indeed, the name of the partnership implies that the partnership was formed for the very purpose of developing the Mississippi shopping center—it cannot be said that due process would not sanction the exercise of jurisdiction over the partnership and these defendants. Certainly, as members of the partnership when the contract was formed, these defendants could have anticipated that in the event of a default under the contract, they could be haled into court in Mississippi.

The problem advanced by counter-defendants in this case, though, lies in the fact that the partners who initially contracted with K & B were not partners when the breach is alleged to have occurred. That is, they had no relationship to the partnership that, it is claimed, ultimately breached the contract. In the court's opinion, though, that these partners might not be considered as having been parties to the contract when the breach occurred does not diminish the sufficiency of the contact which initially placed them within the court's jurisdictional reach. The initial contacts of the partnership related at least to the formation of the contract and are, under the law, attributable to these defendants. Because this case fits within a spe-

cific jurisdiction framework of analysis, those contacts alone provide an adequate foundation to support the exertion of jurisdiction consistent with due process. That the contacts did not continue through the date of the alleged breach does not affect the sufficiency of jurisdiction. It would obviously affect the issue of their ultimate liability, or more pertinently, the lack thereof, but a finding of jurisdiction is not contingent upon a finding of potential liability. Those matters are unrelated. To reiterate, then, the activities of the partnership at the time these individuals were partners related at the very least to the contract with K & B just as this cause of action relates to the contract with K & B. The nexus is clear and jurisdiction may, therefore, be properly exerted over these counter-defendants.

## FAILURE TO STATE A CLAIM

■ With the exception of Herring and Brown, each of the individual counter-defendants, though partners when the contract was entered, were indisputably not partners when the alleged breach occurred. By that time, they had withdrawn from the OMC partnership. For that reason, the court concludes that they can have no liability for the alleged breach. Miss.Code Ann. § 79–12–33 addresses the extent of liability assumed by one who becomes a member of an existing partnership, rendering him liable for partnership obligations arising before his admission to the extent of the partnership property. No similar provision addresses whether and to what extent a withdrawing partner continues to have liability for partnership obligations when the partnership itself continues in existence. It is nevertheless clear that since none of these individuals was associated with OMC at that time, they could not have been responsible for any alleged breach. In a general partnership, each partner has a right to act for and on behalf of all other partners and his actions, so long as they relate to partnership business, bind the partnership and all other partners. *See Beane v. Bowden*, 399 So.2d 1358 (Miss.1981); *Houston General Ins. Co. v. Maples*, 375 So.2d 1012 (Miss.1979); Miss.

Code Ann. § 79–12–25 (partnership liable to same extent as partner committing wrongful act in ordinary course of business of partnership). Moreover, Miss.Code Ann. § 79–12–29 dictates joint and several liability of partners for partnership debts and obligations.

Here, the acts for which liability is sought to be established are alleged breaches of the lease agreement. Those breaches occurred, if at all, at a time after these individuals had withdrawn as partners. They did not commit the acts or omissions of which the breaches are said to consist and, not being partners, they cannot be held liable for the breaches committed by the partnership. It has been said that a partner's withdrawal from the partnership does not relieve him necessarily of partnership debts and obligations which arose during his tenure as a partner. *See Credit Indus. Co. v. Adams County Lumber & Supply Co.*, 215 Miss. 282, 60 So.2d 790, 795 (1952) (defendant who, as member of partnership, was liable for payment of debt at time of his withdrawal from partnership remained liable after his withdrawal). While the lease itself was executed when these people were partners in OMC, liability, if there be any, for any breach of the K & B lease agreement is predicated on events which occurred only after these persons had become disassociated from OMC and at a time during which they had no control or right of control over partnership business. The liability had not come into being. Indeed, when the breach occurred, they, not then being partners, were no longer parties to that contract. Consequently, there exists no basis for concluding that this particular liability followed them. "It is a good defense for a person sued as a partner of the other defendants that he was not a partner, or liable as one, when the obligation was incurred...." 68 C.J.S. § 224b (1950 and Supp.1989) (citing *Rayburn v. Bank of Commerce*, 116 Miss. 54, 76 So. 826 (1917). Judgment is therefore appropriate in favor of counter-defendants Stautz, Grayson, Mitchell, Robbins, Fuller, Ibsen, Rowland and Smith.

In an affidavit executed by Gary W. Noe, Counsel/Leasing of Marathon Group, Inc. and Marathon U.S. Realties, Inc., OMC's managing agent, he states that Howard Brown became a partner in OMC in 1984, after the lease was executed, and exited the partnership in 1985, prior to the alleged breaches. K & B, however, has submitted in response sworn discovery responses by OMC from previous litigation between the parties wherein it is stated that Brown was a partner when the lease was entered and that he remained a partner until December 1986, after the breach is claimed to have occurred. In the brief submitted by counter-defendants in rebuttal to this assertion, an effort is made to explain this inconsistency; according to the brief, the dates set forth in the Noe affidavit are correct and the discovery responses from the prior litigation were simply the result of an error by the person who prepared them, a previous employee of Herring Marathon. On the present motion, though, the court cannot accept this unsubstantiated statement. Rather, because of the apparent discrepancy, there exists a dispute as to the dates during which Brown was a partner in OMC. And, on the present motion, the court must resolve this conflict in the manner most favorable to the nonmovant, K & B. *See Barrett Computer Services, Inc. v. PDA, Inc.*, 884 F.2d 214, 217 (5th Cir.1989). Thus, this court for present purposes must assume that Brown was a partner when the lease was executed as well as when it was allegedly breached. He is, therefore, in the same position vis-a-vis potential liability to K & B as the counter-defendant M.G. Herring, who was a partner from May 1980 through June 1989.

Consistent with the above cited authorities, the mere fact of an exit from the partnership would not necessarily absolve Herring and Brown of liability for breach of the lease. However, the court concludes that based on the following lease provision, there can be no recovery against these defendants, or any of the individual counter-defendants, for that matter. Article 44 of the lease provides as follows:

LIMITATION ON LANDLORD'S LIA-BILITY. Notwithstanding anything to the contrary contained in this lease, in the event of any default or breach by Landlord with respect to any of the terms, covenants and conditions of this lease to be observed, honored or performed by Landlord, Tenant shall look solely to the estate and property of Landlord in the land and building owned by Landlord comprising the Shopping Center for the collection of any judgment (or any other judicial procedures requiring the payment of money by Landlord) and no other property or assets of Landlord shall be subject to levy, execution, or other procedures for satisfaction of Tenant's remedies.

Relying on this provision, OMC maintains in its motion that K & B's counterclaim fails to state a claim against any of the individual counter-defendants for which relief can be granted. K & B's counter-claim against OMC arises from its assertion that OMC breached the terms, covenants and conditions of the lease, and in particular, Article 7, paragraph B, which, according to K & B's interpretation, grants unto K & B the exclusive right to operate a pharmacy in the Oxford Mall shopping center. OMC argues, therefore, that Article 44 governs K & B's recovery; since it is undisputed that none of the individual counter-defendants owns any interest in the Oxford Mall or OMC, there can be no recovery against them for the damages sought by the counterclaim.

While K & B seems to acknowledge that the quoted lease provision applies to its claims predicated upon contract theories of recovery, it urges that the provision is inapplicable to its claims for negligent misrepresentation and fraud. In this regard, K & B, in addition to pleading various breaches of contract terms and warranties by the counter-defendants, has included in its complaint charges of negligent and fraudulent misrepresentation by the counter-defendants. In substance, those counts charge that the representations and warranties contained in the lease agreement, upon which K & B relied in signing and undertaking obligations pursuant to the lease, were false and/or misleading and were known by the counter-defendants to be false and/or misleading when made. According to K & B, the representations and warranties concerning the extent of its ownership of the shopping center area and its authority to grant K & B the exclusive right to operate a pharmacy in the shopping center were willfully and recklessly made.

A careful review of K & B's allegations leads the court to conclude that these tort allegations are in actuality nothing more than a reiteration of the breach of contract claims that perhaps were included in an effort to avoid the dispositive effect of Article 44. It is alleged, for example, in the breach of warranty count, that counter-defendants expressly *warranted* that OMC "owned the Shopping Center in fee simple free of all liens, mortgages, and encumbrances" and that "any operating agreements of record would not conflict with the terms of the Lease," and in particular, the exclusivity clause in favor of K & B. Then, in a separate count, the complaint avers that OMC *misrepresented* "that there were no leases, operating agreements or encumbrances which conflicted with K & B's right to operate the only pharmacy in the Shopping Center." The claimed misrepresentations are the same as the alleged warranties that were breached; thus, "the purported [tortious] conduct was the very conduct that allegedly constituted a breach of the contract," and "adds nothing which would give rise to a cause of action apart from the basic claim for breach of contract." *Furr Marketing, Inc. v. Orval Kent Food Co., Inc.*, 682 F.Supp. 884, 886 (S.D.Miss.1988), *id.* Despite K & B's having characterized the conduct of counter-defendants as tortious, the very essence of each of K & B's charges is the alleged contract breaches; each charge, regardless of how characterized, relates to a "default or breach" with respect to "terms, covenants and conditions" of the lease. The claims are, therefore, duplicative and should be dismissed. *See id.* Article 44, therefore, operates to prevent any recovery against the individual counter-defendants

and mandates the entry of judgment for each of the counter-defendants.

Based on the foregoing, it is ordered that the motion of counter-defendants to dismiss is granted.

ORDERED.