**8182 MARYLAND ASSOCIATES, LIMITED PARTNERSHIP,**
Appellant,

v.

**Kathryn SHEEHAN, Administratrix for The Estate of Richard Sheehan, et al., Respondents.**

No. SC 81647.

Supreme Court of Missouri,
En Banc.

March 7, 2000.

As Modified on Denial of Rehearing
April 25, 2000.

**578**

John S. Sandberg, Stephen P. Niemira, St. Louis, for Appellant.

W. David Wells, James W. Erwin, Timothy Noelker, Thompson Coburn, Jeffrey N. Klar, St. Louis, for Respondents.

WILLIAM RAY PRICE, Jr., Chief Justice.

## I.

### Summary of Opinion

This case concerns the personal liability of withdrawing and incoming partners to a law firm under a long-term lease. Central

to the resolution of the case is the principle that when a partner withdraws or when a new partner is admitted, the existing partnership dissolves and a new partnership is created. Although debts of the dissolved partnership may become debts of the new partnership, they remain the personal obligations of the old partnership's partners. The new partners of the newly created partnership are not personally liable for those debts.

A lease of real property involves liability that arises out of both privity of contract and privity of estate. In this case, Defendant Sheehan was a partner of Popkin, Stern, Heifitz, Lurie, Sheehan, Reby & Chervitz that entered into the lease agreement with 8182 Maryland Associates ("8182 Maryland"). Even though Sheehan withdrew from the firm, causing its dissolution, he remains personally liable on the lease by privity of contract unless an agreement to the contrary or some other defense is established. It was error for the trial court to grant him summary judgment.

At the various times Defendants Noelker, Burdette, Lageson, and Klar were admitted as partners to Popkin & Stern, new partnerships were created. These partnerships, and their respective partners, however, were not bound by privity of contract to 8182 Maryland because neither the partners nor any of the partnerships of which they were members signed the lease or expressly assumed the lease obligations. Although the new firms and their partners were presumed assignees of the lease and liable by privity of estate to 8182 Maryland, this liability was limited to the time period of their occupation of the premises. No amount was established as due for the time period these individuals were members of a partnership in possession of the premises. The trial court correctly granted them summary judgment.

## II.

### Facts

On April 5, 1984, the Missouri general partnership of Popkin, Stern, Heifitz, Lurie, Sheehan, Reby & Chervitz, a law firm, entered into a lease agreement with 8182 Maryland. Defendant Richard J. Sheehan, a general partner of Popkin, Stern, Heifitz, Lurie, Sheehan, Reby & Chervitz, signed the lease along with the other thirteen general partners.[1] This lease was for the use of two floors and space in the parking garage of an office building that had yet to be constructed. The term of the lease was 120 months and commenced on the date the space was made "ready for occupancy" by 8182 Maryland. Rent was to be paid on the first day of each month. The lease was silent as to liability for incoming or withdrawing partners from Popkin, Stern, Heifitz, Lurie, Sheehan, Reby & Chervitz. The lease did, however, contain a clause requiring the written consent of the landlord for assignment of the lease.

In October of 1985, Sheehan withdrew from the partnership.[2] On December 31, 1985, Sheehan assigned his interest in the partnership to the remaining partners. Neither this document nor the partnership agreement was made a part of the record on appeal. In January of 1986, Sheehan's resignation became effective and the partnership formally adopted the shorter name of "Popkin & Stern." Apparently, the lease with 8182 Maryland was not expressly assigned in writing by the old partnership of Popkin, Stern, Heifitz, Lurie, Sheehan, Reby & Chervitz to the new partnership of Popkin & Stern, nor did

---

1. Sheehan passed away on March 11, 1996. His wife and estate administrator, Kathryn Sheehan, has been substituted as a party in this suit.

2. Sheehan resigned from the firm to become the Assistant Chief Litigation Counsel, Division of Enforcement, Securities and Exchange Commission in Washington, D.C. He subsequently joined the New York Stock Exchange as vice president for enforcement and became first vice president and assistant general counsel for Dean Witter.

Popkin & Stern assume the obligations of the lease in writing. On or before April 26, 1986, Popkin & Stern began occupancy of the leased premises.

At varying points between January 1, 1985, and January 1, 1986, Defendants Timothy Noelker, Douglas Burdette, Barbara Lageson, and Jeffrey Klar became partners of Popkin & Stern. There is no evidence in the record that any partnership agreement signed by these partners contained language concerning personal liability on the lease for incoming partners. None were asked to sign the lease agreement or any assumption agreement. It does not appear that the lease agreement was ever expressly assigned in writing to any of the new partnerships that resulted from the changing composition of the firm, or that any of these new partnerships assumed the obligation of the lease in writing. Noelker, Burdette, Lageson, and Klar all withdrew from the firm on or before December 1, 1989. None entered into a withdrawal agreement with any Popkin & Stern partnership or 8182 Maryland.

In September of 1991, Popkin & Stern defaulted on its lease obligation to 8182 Maryland and subsequently filed for bankruptcy in 1992. The third amended petition in this case, filed on January 13, 1993, alleged that 8182 Maryland suffered damages in the amount of $865,488.53 for past-due rent and the partnership's pro rata share of the building's operating expenses and parking garage expenses and $4,891,-975.91 for the "present value of the Premises for the remainder of the stated term over the reasonable value of the Premises for the remainder of the stated term," a remedy the lease expressly allowed to the landlord upon the partnership's default. 8182 Maryland named as defendants all past and present general partners of the firm since April 4, 1984, but has dismissed thirty-six of those defendants.

Noelker and Klar filed partial motions for summary judgment seeking to limit any recovery of damages to partnership assets, not their individual assets. The trial court entered an order of partial summary judgment in favor of Noelker on January 22, 1993, and in favor of Klar on February 10, 1993. Later, Sheehan, Noelker, Klar, Burdette, and Harris filed separate motions for summary judgment requesting the circuit court dismiss, in all respects, the third amended petition against each of them. In separate orders, the trial court granted these motions in favor of all defendants. It is from the granting of these motions that 8182 Maryland appeals.

On February 20, 1998, the trial court found there was no reason for delay of plaintiff's appeal and certified its judgment as final under Rule 74.01(b).

### III.

### *Missouri Partnership Law*

Partnership law in Missouri is governed by the Uniform Partnership Law (UPL). Sections 358.010 to 358.430, RSMo 1994. The UPL is nearly identical to the Uniform Partnership Act (UPA), adopted in most states. *See* 6 Uniform Laws Annotated. The UPL "shall be so interpreted and construed as to effect its general purpose to make uniform the law of those states which enact it." Section 358.040.4.

Central to the determination of personal liability for Defendant Sheehan and Defendants Noelker, Burdette, Lageson, and Klar is the legal effect the withdrawal of existing partners and the addition of incoming partners has on a partnership. The withdrawal of an existing partner dissolves the partnership. "The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." Section 358.290; *see also Warren v. Warren*, 784 S.W.2d 247, 256 (Mo.App. 1989). Dissolution, however, is not a termination of the partnership business.

"On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." Section 358.300; *see also Schoeller v. Schoeller,* 465 S.W.2d 648, 654 (Mo. App.1971). A partner's personal liability is not discharged merely by the dissolution of the partnership. Section 358.360.1. However, a partner may be "discharged from any existing liability upon dissolution of the partnership by an agreement to that effect between himself, the partnership creditor and the person or partnership continuing the business." Section 358.360.2. Under certain circumstances, such an agreement may even be inferred. *Id.*

■ The remaining partners may choose not to terminate and wind up, but to continue the partnership business. "The Uniform Partnership Law contemplates that dissolved partnerships may continue in business for a short, long or indefinite period of time, ... so long as none of the partners insist on a winding up and final termination of the partnership business." *Schoeller v. Schoeller,* 497 S.W.2d 860, 867 (Mo.App.1973). The result is that the old firm continues until its affairs are wound up and a new partnership is formed, consisting of the remaining members of the old partnership. *Ohlendorf v. Feinstein,* 636 S.W.2d 687, 689 (Mo.App.1982). Any creditors of the old partnership also become creditors of the new partnership continuing the business. Section 358.410.

The UPL does not expressly make the admission of a new partner a ground for dissolution. However, "[i]t is universally admitted that any change in membership dissolves a partnership, and creates a new partnership." Comment, UPA section 41; *see* 59A Am.Jur.2d *Partnerships* section 824; *see also Ellingson v. Walsh, O'Connor & Barneson,* 15 Cal.2d 673, 104 P.2d 507, 509 (1940).

A partnership is a contractual and fiduciary relation, dependent on the personality of its members, and the withdrawal or admission of a member changes so radically the contractual. rights and duties inter se as to produce essentially a new relation, even though the parties contemplate no actual dissolution of the firm and continue to carry on business under the original articles and with the same account books.

59A Am.Jur.2d *Partnerships* section 826 n. 37 (citing *Snyder Manufacturing Co. v. Snyder,* 54 Ohio St. 86, 43 N.E. 325 (1896)); *see also Ellingson v. Walsh, O'Connor & Barneson,* 104 P.2d at 509.

■ Moreover, "it is generally accepted that since the Uniform Act only incorporated in part the common law on dissolutions, other means of dissolution known to the common law are not precluded by the Act." *Weeks v. McMillan,* 291 S.C. 287, 353 S.E.2d 289, 291–92 (App.1987) (citing *Fenner & Beane v. Nelson,* 64 Ga.App. 600, 13 S.E.2d 694 (1941)). Under Missouri common law, a partnership is dissolved by the admission of a new partner. *Mudd v. Bast,* 34 Mo. 465, 468 (1864).

## IV.

### *The Claim Against Sheehan*

■ Defendant Sheehan was a partner who personally signed the lease, but withdrew from the partnership of Popkin, Stern, Heifitz, Lurie, Sheehan, Reby & Chervitz before the lease agreement commenced or was breached by Popkin & Stern. There is no doubt Sheehan was personally liable for the lease while still a partner at Popkin, Stern, Heifitz, Lurie, Sheehan, Reby & Chervitz. "Every partner is an agent of the partnership for the purpose of its business, and the act of every partner ... binds the partnership...." Section 358.090.1. "All partners are liable [j]ointly and severally for ... all ... debts and obligations of the partnership." Section 358.150. When Sheehan and the other general partners of Popkin, Stern, Heifitz, Lurie, Sheehan, Reby & Chervitz signed the lease agreement with 8182 Maryland, each partner of

the partnership became personally liable on the agreement.

### A.

 Sheehan first claims his withdrawal from the partnership terminated his personal liability because his withdrawal became effective before the lease agreement "commenced." We do not agree. A party becomes liable on a contractual agreement, even a lease agreement with a future date of commencement, at the moment it is executed. *Finnerty v. Hoppe*, 150 Mo.App. 515, 131 S.W. 128, 129 (1910) ("Though the relation of landlord and tenant in the strict sense of the term never arose because of the fact defendant declined and refused to occupy the premises, the covenant to pay the rent reserved is a valid obligation and operates to sustain the action on the theory of a privity of contract even if there is no privity of estate."). Thus, occupation, even if it is the triggering event for "commencement" of the lease, is not necessary under privity of contract for liability to attach. Commencement, under the terms of this lease, was merely the starting point for the collection of rent and the possibility of occupancy, not the beginning of contractual liability. Once Sheehan signed the lease agreement, he became jointly and severally liable for all existing and future obligations under that lease.

### B.

 Sheehan also claims his liability terminated at withdrawal because he withdrew before any breach of the lease occurred. We again disagree. When Sheehan withdrew from Popkin, Stern, Heifitz, Lurie, Sheehan, Reby & Chervitz, the partnership was dissolved, and the new partnership of Popkin & Stern resulted among the remaining partners. Section 358.290; 358.300. Dissolution, however, "of the partnership does not of itself discharge the existing liability of any partner." Section 358.360.1; *see also Thompson by Thompson v. Gilmore*, 888 S.W.2d 715, 716 (Mo.App.1994) ("Under Missouri law, including the adoption of the Uniform Partnership Act, 'dissolution does not relieve the partners from their liability for performance of contracts theretofore made.'") (quoting *City of North Kansas City, Missouri v. Sharp*, 414 F.2d 359, 366 (8th Cir.1969)); *Daniels Trucking, Inc. v. Rogers*, 7 Kan.App.2d 407, 643 P.2d 1108 (1982); *Fenix v. Celebrezze*, 243 F.Supp. 816 (W.D.Mo.1965). Liability for partnership obligations does not die simply by disassociating oneself from the partnership business.

 Moreover, withdrawing partners retain personal liability after withdrawal, even for contingent obligations. In *Thompson*, two partners of a law partnership that contracted with Thompson for representation in a wrongful death action, subsequently withdrew. The remaining partners failed to file Thompson's claim before the statute of limitations ran. The court expressly held the two partners who had withdrawn liable for the contingent obligation assumed by the law firm before they left. *Thompson by Thompson v. Gilmore*, 888 S.W.2d at 716.

### C.

 Sheehan was free to protect himself after his withdrawal by forming an agreement with Popkin, Stern, Heifitz, Lurie, Sheehan, Reby & Chervitz and 8182 Maryland releasing himself from personal liability under the lease. *See* Section 358.360.2. The record shows no evidence of any express agreement. However, "such agreement may be inferred from the course of dealing between the creditor having knowledge of the dissolution and the person or partnership continuing the business." *Id.*

The trial court erred in granting Sheehan summary judgment. We reverse and remand for further proceedings, including a determination of whether a release agreement should be inferred or whether any other defenses might apply.

## V.

### The Claims Against Noelker, Burdette, Langeson and Klar

Defendants Noelker, Burdette, Lageson, and Klar became partners of Popkin & Stern at various times subsequent to the lease agreement, but all left the partnership before the breach occurred. Defendants rely exclusively on section 358.170 for the proposition that their liability can only be satisfied out of partnership assets.

Section 358.170 states: "A person admitted as a partner into an existing partnership is liable for all the obligations of the partnership arising before his admission as though he had been a partner when such obligations were incurred, except that this liability shall be satisfied only out of partnership property." Defendants argue that because the lease was a pre-existing obligation of the previous partnership, which they never signed, they cannot be held individually liable for the lease obligations.

### A.

▆▆▆ We have not had occasion to interpret section 358.170. Several other states, however, have adopted identical language in their partnership laws and have analyzed the implications of that section in the context of lease agreements.

### i.

Generally, these states have approached the issue of liability by focusing upon when the obligation of a lease "arises." The first of these cases is *Barbro Realty Co. v. Newburger*, 53 A.D.2d 34, 385 N.Y.S.2d 68 (1976). There, a landlord let premises to the partnership of Newburger, Loeb & Co. as tenant. Years after the lease was entered into and modified, Rubin and Searles became partners. Several years later, there was a default in the payment of rent. Neither Rubin nor Searles had withdrawn from the partnership before the time of default. Because the partnership was liable on the lease but its assets were insufficient to pay the rent due, the question became whether Rubin and Searles could be held individually liable for the rent amount.

The court, acknowledging New York's version of UPA section 17, began by trying to determine when the "obligation" of a lease becomes "due."

> We find that the obligation to pay rent does not constitute a preexisting debt. The lease agreement may have been executed prior to the entry of the defendants into the partnership, but the rent as a debt arose only when it became due and accordingly the defendants, who were partners at the time of the default, may be held personally liable therefor.

*Id.* at 70 (citations omitted). Thus, *Barbro* held that because the obligation of a lease does not arise until rent becomes due, those who are partners in a partnership at the time of default of a lease agreement are personally liable.

*59th and Park Associates v. Inselbuch*, 68 A.D.2d 838, 414 N.Y.S.2d 537 (1979), further discussed the issue of when the obligations of a lease agreement arise. At issue was the liability of a partner who joined a partnership after a lease agreement had been executed but withdrew from the partnership before any breach of that agreement occurred. The three judge majority opinion noted that "the covenant to pay rent creates no debt until the time stipulated for payment arrives, and that the obligation to pay rent is 'altogether contingent.'" *Id.* at 538 (quoting *In re Ryan's Estate*, 294 N.Y. 85, 60 N.E.2d 817, 821 (1945)). The majority opinion also stated that, "defendants Lamm and Klineman had withdrawn from the partnership before the time stipulated for payment; hence, there was no debt at the time of withdrawal." *Id.*[3]

3. Similar analysis is set out in *Oxford Mall Co. v. K & B Mississippi Corp.*, 737 F.Supp. 962, 966 (S.D.Miss.1990), in a non-rent case.

The majority, however, went on to discuss a "surrender" agreement entered into between the landlord and the surviving partnership as a separate reason for finding no liability. The two other judges sitting in the case concurred in two separate opinions based on the surrender agreement. *See In re The Securities Group 1980*, 74 F.3d 1103, 1111 (11th Cir. 1996) (finding *Inselbuch* to have turned primarily on the surrender agreement and not New York's version of UPA section 17).

The final case discussing when the obligation of a lease arises is *Setzer's Steel Systems v. Chenault Development Corporation*, 725 S.W.2d 22 (Ky.App.1987). There, two companies signed a lease and construction agreement and agreed it would commence upon completion of the proposed facility. Thereafter, the lease was assigned to a joint venture of which the defendant was a partner and, on that same date, commenced. Later, the joint venture stopped paying rent and the personal liability of the incoming partner, who joined the partnership only after execution of the lease, was at issue. The court determined that the obligation of a lease is incurred when it is signed, but arises only when rent is due, thus utilizing the same logic of *In re Ryan's Estate* as do *Inselbuch* and *Barbro*.

ii.

■ *Ellingson v. Walsh, O'Connor & Barneson*, 15 Cal.2d 673, 104 P.2d 507 (1940), however, approached the question by interpreting California's version of UPA section 17 in the dual context of property and contract law theories, traditionally referred to as privity of contract and privity of estate. In *Ellingson*, a partner who joined a partnership after the execution of a lease agreement contested his personal liability for a breach of the lease. The court, however, found that trying to determine when the obligation of a lease agreement arises,

overlooks the fact that a tenant of real property is not liable for rent solely by reason of the contract of lease.... One may become a tenant at will or a periodic tenant under an invalid lease, or without any lease at all, by occupancy with consent. Such tenancies carry with them the incidental obligation of rent, and the liability therefore arises not from contract but from the relationship of landlord and tenant. The tenant is liable by operation of law.... Both liabilities exist simultaneously. The lease has a dual character; it is a conveyance of an estate for years, and a contract between lessor and lessee. The result is that dual obligations arise[:] contractual obligations from the terms of the lease, and obligations under the law from the creation of the tenancy.

*Id.* at 509. Thus, a party that signs a lease agreement is liable not only contractually for the covenants of the agreement by privity of contract, but also for rent under the creation of a tenancy by privity of estate.

The court also found that although the original partnership expressly assumed the lease and was, therefore, liable both under the lease contract and as a tenant, the addition of a new partner caused the first partnership to be dissolved and a new partnership came into being composed of the old members and the new partner. "This second partnership did not expressly assume the obligations of the lease, but it occupied the premises. Whether it was liable contractually on the lease is immaterial; it became liable for rent as a tenant." *Id.* Thus, the members of the new partnership were liable for rent not because of when the obligation of a lease arose, but because they were in occupation of the premises. This liability "arises and binds ... continually *throughout the period of ... occupation.*" *Id.* at 510 (emphasis added).

B.

■ The analysis set out in *Ellingson* provides the clearest framework for

determining the personal liability of partners relative to a partnership lease consistent with the UPA and Missouri landlord/tenant law. In Missouri, a lease agreement has a dual nature; it is both a conveyance and a contract. *Incentive Realty, Inc. v. Hawatmeh,* 983 S.W.2d 156 (Mo.App.1998); *Wetherbee, Ltd. v. Allred,* 969 S.W.2d 756 (Mo.App.1998); *McGraw v. Andes,* 978 S.W.2d 794 (Mo.App.1998); *Siragusa v. Park,* 913 S.W.2d 915 (Mo.App.1996); *State ex rel. State Highway Comm'n of Missouri v. St. Charles County Associates,* 698 S.W.2d 34 (Mo.App.1985); *Rietsch v. T.W.H. Co.,* 702 S.W.2d 108 (Mo.App.1985); *C & J Delivery, Inc. v. Vinyard & Lee & Partners, Inc.,* 647 S.W.2d 564 (Mo.App.1983); *Kamada, M.D. v. RX Group Limited,* 639 S.W.2d 146 (Mo.App.1982); *King v. Moorehead,* 495 S.W.2d 65 (Mo.App.1973); *see also* Corbin on Contracts, section 686 (1960); Williston on Contracts, section 890 (3d ed. Jaeger); Thompson on Real Property, section 1110 (1959 replacement). "As between the lessor and lessee, a lease creates a contractual relationship, privity of contract, as well as being a conveyance of an estate in land which creates privity of estate." *Incentive Realty, Inc. v. Hawatmeh,* 983 S.W.2d at 160. Privity of contract carries with it the obligations in the written lease agreement, while privity of estate carries with it liability for rent and any other covenants running with the land.

▌ Thus, the original partnership of Popkin, Stern, Heifitz, Lurie, Sheehan, Reby & Chervitz had privity of contract upon signing the lease agreement. *See Siragusa v. Park,* 913 S.W.2d 915, 918 (Mo.App.1996). When Sheehan withdrew, however, the original partnership was dissolved and a new one, Popkin & Stern, comprised of the remaining members of the original partnership, was formed. This new partnership continued the partnership business, acquiring the creditors of the old partnership. Although not a party to the lease between Popkin, Stern, Heifitz, Lurie, Sheehan, Reby & Chervitz and 8182 Maryland, Popkin & Stern occupied the leased premises and paid the rent. Unfortunately, there was no assignment and/or assumption agreement specifically defining the relationship of the old partnership and its partners, the new partnership and its partners, and 8182 Maryland.

▌ "When a party other than a tenant is shown to be in possession of the premises, and paying rent therefor, there is a presumption that the lease has been assigned to him." Milton R. Friedman, *Friedman on* Leases section 7.501c1 (4th ed.1997); *see also Clasen v. Moore Brothers Realty Co.,* 413 S.W.2d 592, 601 (Mo.App.1967). The lease was, therefore, presumably assigned to the resulting partnership. Over the years, each time an old partner left or a new partner joined the partnership, a similar dissolution occurred, and when the remaining partners joined by any incoming partners continued to occupy the leased premises and pay rent, another assignment of the lease to the resulting partnership was presumed.

▌ Although the lease here contained an anti-assignment clause,[4] such that Popkin, Stern, Heifitz, Lurie, Sheehan, Reby & Chervitz could not assign its interest in the lease without the written consent of 8182 Maryland, a violation of an anti-assignment clause does not terminate the contract unless a lease provision provides otherwise. "In the absence of such a provision, the breach by one of the parties does not ipso facto terminate the agreement. The aggrieved party may terminate the contract or waive the breach and treat the contract as in full force." *Hunt v. Shell Oil Co.,* 116 F.2d 598, 600 (10th Cir.1941); *see also Bauer v. White,* 225 Mo.App. 270, 29 S.W.2d 176 (1930).

---

4. "Tenant shall not assign, nor sublet, nor permit the use by others of the Leased Premises, or any part thereof without, in each instance, the prior written consent of Landlord, which consent shall not be unreasonably withheld."

[A]n assignment of a lease which violates a covenant does not automatically terminate the lease, but merely gives the lessor the option to terminate, or waive such option and continue the leasehold. One obvious way for the lessor to waive the option is to accept rent money from the assignee after the assignment in violation of the covenant occurred, with knowledge that it had occurred.

*Setzer's Steel Systems, Inc. v. Chenault Development Corp.*, 725 S.W.2d 22, 24 (Ky. App.1987). Because the lease did not contain a termination provision, and because 8182 Maryland continued to accept rent payments from each successive partnership, the anti-assignment clause in this lease does not defeat the presumption of assignments.

 Due to its occupation of the premises and the presumed assignment, Popkin & Stern, and each partnership thereafter, was in privity of estate with 8182 Maryland. *Mutual Drug Co. v. Sewall*, 353 Mo. 375, 182 S.W.2d 575, 578 (1944); *Siragusa v. Park*, 913 S.W.2d at 918; *Weigle v. Rogers*, 202 Mo.App. 520, 213 S.W. 501, 503 (1919) (citing *B. Roth Tool Co. v. Champ Spring Co.*, 93 Mo.App. 530, 67 S.W. 967, 969 (1902)). "Upon an assignment by the lessee, the privity of estate between the lessee and lessor is destroyed, and a new privity of estate is created between the assignee and the lessor." *Siragusa v. Park*, 913 S.W.2d at 918. Privity of contract, however, was not created by the presumed assignment. "Such assignment does not create privity of contract between the lessor and assignee, even if the lessor assents to the assignment, and accepts the assignee as his tenant." *Weigle v. Rogers*, 213 S.W. at 503 (citing *B. Roth Tool Co. v. Champ Spring Co.*, 67 S.W. at 969); *see also Bauer v. White*, 29 S.W.2d at 180; *Dean v. Lee*, 227 Mo.App. 206, 52 S.W.2d 426, 429 (1932).

 In addition, there is no corresponding presumption of an assumption of the lease obligations that would be binding once the partnership no longer occupied the premises. Without an assumption, "the assignee is liable only by virtue of privity of estate, and he can, therefore, relieve himself of all liability by at any time assigning the lease; and he may assign to a man of straw for the purpose of escaping liability." *Bauer v. White*, 29 S.W.2d at 180 (quoting I McAdam on Landlord and Tenant (4th ed.) p. 869); *see also* Vol. 1 *American Law of Property* section 3.61 (1952) ("[T]he assumption generally must be expressed in the assignment; no assumption is implied merely from the taking of an assignment"); Milton R. Friedman, *Friedman on Leases* section 7.501c (4th ed.1997).

 Privity of estate creates liability only for payment of rent and other covenants running with the land while the tenant is in possession. *Mutual Drug Co. v. Sewall*, 182 S.W.2d at 578; *Employees Consumer Organization, Inc. v. Gorman's Inc.*, 395 S.W.2d 162, 166 (Mo.1965); *Weigle v. Rogers*, 213 S.W. 501 at 503. Thus, each succeeding Popkin & Stern partnership, and each of the partnerships' varying partners, became jointly and severally liable for rent payments only during the period their partnerships were in privity of estate with 8182 Maryland. When each Defendant withdrew from the partnership they were a member of, that partnership ceased to exist and ceased to occupy the land. Its privity of estate ended, and thus the withdrawing partner's personal liability for rent ended as well.

8182 Maryland was left to look to the partnership it contracted with and the subsequent assignees for its claims for future rent. Defendants Noelker, Burdette, Lageson, and Klar are not personally liable for rent arising subsequent to the time they were members of a partnership in occupation of the premises when the lease breach occurred subsequent to their withdrawal. We affirm the judgments entered in their favor.

All concur.

## ON MOTION FOR REHEARING

 8182 Maryland Associates, Limited Partnership seeks rehearing on the basis of a partnership agreement neither submitted to the trial court nor made a part of the record on appeal. Generally, appellate courts will not consider evidence outside of the record on appeal. *Citizens for Safe Waste Management v. St. Louis County Air Pollution Control Appeal Bd.*, 896 S.W.2d 643, 644 (Mo.App.1995); *Castle v. Castle*, 642 S.W.2d 709, 714; *Southwestern Bell Media, Inc. v. Ross*, 794 S.W.2d 706, 707 (Mo.App.1990); *Carondelet Savings & Loan Ass'n v. Boyer*, 595 S.W.2d 744, 746 (Mo.App.1980). Even were we to consider the agreement, it contains no express language establishing the personal liability of incoming partners for pre-existing partnership obligations. The motion is overruled.