NO. 07-05-0247-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



JANUARY 18, 2006


______________________________



DENNIS WAYNE OVERTON, 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE 355TH DISTRICT COURT OF HOOD COUNTY;



NO. 9478; HON. RALPH H. WALTON, JR., PRESIDING


_______________________________



Memorandum Opinion


_______________________________



Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

 Dennis Wayne Overton (appellant) appeals his conviction for aggravated sexual
assault of a child. Via three issues, he challenges the sufficiency of the evidence to support
his conviction and the effectiveness of his trial counsel. We overrule each and affirm the
judgment. 

 Issues One and Two - Sufficiency of the Evidence

 Appellant questions the legal and factual sufficiency of the evidence supporting his
conviction through his first two issues. He posits that the live testimony received by the trial
court was not enough to establish his guilt. Yet, in addition to that testimony, the trial court
also had before it appellant's plea of guilty as well as his judicial confession. And, through
the latter he admitted that he read the indictment and "committed each and every allegation
it contains . . . ." 

 A judicial confession admitting the veracity of the allegations in an indictment
suffices to establish guilt. Dinnery v. State, 592 S.W.2d 343, 353 (Tex. Crim. App. [Panel
Op.] 1980) (op. on reh'g) (holding that a judicial confession alone is sufficient to support a
guilty plea). Furthermore, appellant says nothing of his judicial confession in proffering his
argument to us. This omission is rather interesting since the trial court expressly
admonished him that the confession alone would suffice to prove guilt, and appellant
responded that he understood the admonition. Given the written judicial confession
executed by appellant, we reject his first two issues.

 Issue Three - Effectiveness of Counsel

 In his last issue, appellant contends that his trial counsel was ineffective. This is so
because 1) counsel purportedly failed to fully disclose and explain the factual evidence
against him and 2) his plea was involuntary. Regarding the former, appellant cites us to
no evidence of record supporting the allegation. Instead, the passage to which he does cite
discloses that he and his trial attorney spoke at length regarding his plea of guilty and the
concomitant loss of rights. Furthermore, our own review of the record failed to uncover
evidence of the purported deficiency. Thus, the burden imposed on appellant by such
cases as Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) has not been satisfied
with regard to this allegation.

 Concerning the other ground, the record indicates that the trial court appointed a
psychologist to assist appellant in the preparation, evaluation, and presentation of a
defense. However, evidence of the expert's findings was not presented to the trial court. 
This evinced unreasonable conduct on the part of trial counsel, according to appellant,
because the latter supposedly "was confused about the consequences of his plea." Yet,
since there was no motion for new trial filed, appellant presented us with nothing that
suggests the expert would have testified favorably. Nor does the record illustrate why trial
counsel opted not to present the findings of the expert, assuming the expert even met with
appellant or his counsel and developed findings. 

 As for the evidence of confusion, appellant cites us to a passage wherein 1) he
represented that no one induced his plea through promises and that he was guilty, and 2)
his counsel explained how appellant's "mind ha[d] been fixed on this guilty plea." Yet,
nowhere in that exchange does there appear evidence of "confusion," mental or otherwise,
necessitating any type of hearing on appellant's ability to understand his conduct or the
consequences of his plea. Instead, it suggests that appellant and his counsel discussed
appellant's dilemma at length. This, coupled with the trial court's admonitions to appellant
about the effect of his plea, obligates us to again conclude that appellant failed to carry the
burden imposed by Bone. 

 Accordingly, the judgment of the trial court is affirmed.

 

 Brian Quinn 

 Chief Justice

Do not publish.



d in the
127th District Court. In that action, Giles and LRG were the plaintiffs and Yari, Persico, and
Yarico were defendants. Giles's petition alleged appellants breached the lease "by failing
and refusing to consider or approve any sign plans presented by [her]" and by failing to
remove unauthorized signs which encroached on her leasehold. Yari answered asserting
he was not liable in the capacity in which he was sued because his participation was only 
as president of Persico. Yarico made a similar assertion, claiming it was not a party to the
lease agreement. All three defendants also asserted several facts and claims labeled
affirmative defenses. 

 After a bench trial, the court rendered judgment for appellees for approximately
$56,000 in actual damages and $22,000 in attorneys fees. The judgment was against Yari
individually and d/b/a Persico and Yarico. Yari appealed and, in an opinion issued April
1, 1999, the First Court of Appeals reversed the trial court's judgment on the basis that the
discovery sanctions were improperly imposed. It remanded the case for a new trial.

 The second trial was to a jury in March 2000. The jury found the landlord failed to
allow Giles a business sign and that $59,428.75 would fairly and reasonably compensate 
her. It denied any recovery for lost profits from 1990 through 1993. The issue of attorneys
fees was separately tried to the court. The court rendered judgment for Giles for
$59,184.52 in actual damages and $108,000 in attorneys fees through trial, and additional
amounts of $30,000 on appeal to this court, $5,000 if a petition for review is filed in the
supreme court, $15,000 if a petition is granted and $50,000 on writ of certiorari to the
United States Supreme Court. The judgment was signed March 27, 2001, and after a
motion for new trial, Yari and Persico timely filed a notice of appeal.

 We recognize that the trial court's judgment makes no express disposition of the
claims against Persico and Yarico. It did, however, contain a "Mother Hubbard" clause
stating that all relief not expressly granted was denied. Because the judgment was
rendered after a conventional trial on the merits, we presume that it disposed of all parties
and claims and is appealable. Lehmann v. Har-Con Corp., 39 S.W.3d 191, 198-99 (Tex.
2001); North East Independent School Dist. v. Aldridge, 400 S.W.2d 893, 895 (Tex. 1966). (1)

 Appellants' first issue contends there is no evidence that they breached the lease. 
 Giles's breach of contract claim was based on Yari's failure and refusal to consider and
approve of the sign plans and the failure to remove signs which she claimed encroached
on her leased space. Yari argues there is no evidence that the lease required them to
consider and approve the sign plans. In reviewing a no-evidence point, we must examine
the record in the light most favorable to the finding to determine if there is any probative
evidence, or reasonable inferences therefrom, which supports the finding, and we must
disregard all evidence or reasonable inferences therefrom to the contrary. Raw Hide Oil
& Gas, Inc. v. Maxus Exploration Co., 766 S.W.2d 264, 276 (Tex.App.--Amarillo 1988, writ
denied). Giles's breach claim was based on section 14.3 of the lease, which provides that
the "landlord shall not be in default unless landlord fails to perform obligations required of
landlord within a reasonable time, but in no event later than thirty days after written notice
by tenant." Yari contends "the lease imposed no obligations whatsoever on the landlord." 
If the landlord truly had no obligations under the lease, section 14.3 would be
unnecessary. Moreover, a total absence of obligations on the landlord would make the
contract unenforceable for lack of consideration. 

 Section 7.5 of the lease governed tenant signs and provided, "[t]enant shall not
place or affix any signs or other objects upon or to the roof or exterior walls of the premises 
. . . without the prior written consent of landlord." The lease also provided that the property
was to be used for a retail store. There was testimony that a sign is necessary to the
success of a business of this type. Taken as a whole, the contract clearly contemplated
that tenants were to have signs, otherwise the phrase "without the prior written consent of
the landlord" would serve no purpose. The effect of section 7.5 was to reserve to
appellants the right to approve those signs. Where a lease requires a tenant to seek a
landlord's approval, the landlord's duty to consider that request is necessarily implied. 
Section 14.3 affirmatively required the determination to be made in a reasonable time. 

 Although it is undisputed that appellants gave written approval for a sign, it is also
undisputed that they removed the sign that was constructed pursuant to those plans
because it was not installed in the position specified in the plans. Because there was
evidence that the sign would be wholly ineffective if installed where demanded by the
landlord, a rational trier of fact could find this to be some evidence that appellants
breached their obligations under the lease by effectively denying appellees the ability to
have a sign over the leased space.

 In their second issue, appellants contend the trial court erred in instructing the jury
that Giles "was allowed a business sign that complied with the Landlords' approval of
October 12, 1990," because that statement does not appear anywhere in the lease. 
Appellants argue there were no pleadings or evidence to support this instruction and the
court improperly implied an additional provision into the unambiguous agreement. As
noted above, section 7.5 simply reserved to appellants the right to approve any sign to be
erected by a tenant. It did not bar the use of signs by tenants but, rather supports the
conclusion that tenants would have some type of sign. The evidence is undisputed that
appellants approved a plan for a sign on October 12, 1990. The application of the lease
terms to the undisputed sign plan approval made the statement in the disputed instruction
true as a matter of law. Because the undisputed evidence supports such a determination,
the trial court's instruction that Giles was allowed a business sign in compliance with the
approval was proper. 

 Appellants also contend the instruction was not raised by the pleadings as required
by Rule 278. The question submitted to the jury was whether "the landlord failed to allow
the tenant a business sign." This issue was the core complaint of appellees' petition. 
They alleged that appellants breached the lease by failing to approve a business sign. A
petition need not allege each supporting fact, only give fair notice of the claims asserted. 
Tex. R. Civ. P. 45. The evidence of the terms of the contract and October 12 written
approval meet the requirements of Rule 278. We overrule appellants' second issue.

 Appellants' third issue contends there is no evidence to support the jury's answer
that they did not allow Giles a business sign that complied with the approval. In support,
it cites the testimony of Robert Tanner that the sign fit where it was intended on the
approved plan. Appellants characterize Tanner as "an unbiased witness with no interest
in this lawsuit." However, the record clearly shows that at the time of the events giving rise
to this litigation, Tanner was the property manager hired by Yari or Persico, and the
conduct of the management company during the origin of this dispute formed part of the
basis of Giles's theory of liability. Consequently, Tanner, although not a party to the
litigation, was defending his own conduct at trial and was not an unbiased witness.

 Appellants also assert that "the sign stayed on the roof until Giles abandoned the
premises." The record reference given does not support this statement. Indeed, the
statement is directly controverted by Giles's testimony: 

 Q: Approximately how long after the removal of the sign did you move out?

 A: How many days? I don't recall but it was very - immediately almost.

 Q: What was the reason that you moved out?

 A: Because they didn't - I didn't have a sign . . . .

There was also evidence that had the sign been placed below the top of the fascia, it
would have been largely obstructed. A rational factfinder could find that by only allowing
appellees to place a sign in that position, appellants effectively denied appellees a sign. 
We overrule appellants' third issue.

 In their fourth issue, appellants assign error to the rendition of judgment against Yari
individually and d/b/a Persico, Inc., rather than the corporate entity Persico, Inc., who they
claim was the true landlord. Their claim is primarily based on the fact that Persico was the
party named on the face of the written lease and claim there was no evidence of a contract
between Giles and Yari. We disagree. 

 Appellants do not dispute that Giles was a party to the lease or that Yari signed as
or for the landlord. Nor do they dispute the fact that Persico was not incorporated when
the lease was executed. The evidence also showed that Yari was the owner of the real
property which was the subject of the lease. The rule is well-established in Texas that a
contract made by the promoter of a corporation before the corporate existence does not
become a contract of the corporation when formed. Aloe Ltd., Inc. v. Koch, 733 S.W.2d
364, 366 (Tex.App.--Corpus Christi 1987, no writ); Gutherie v. Country Club Estates, Co.,
26 S.W.2d 403, 404 (Tex.Civ.App.-Austin 1930, no writ). (2) The promoter is not liable
where the other party knows the corporation does not yet exist. Aloe, 733 S.W.2d at 366. 
Appellants presented no evidence that appellees knew Persico was not a corporation at
the time the lease was executed. Therefore, the rule stated in Aloe, making promoters
such as Yari personally liable is applicable. Although appellees did not specifically allege
promoter liability in its petition, the issue was fully litigated without objection to the lack of
supporting pleadings, making the rule of trial by consent applicable. Tex. R. Civ. P. 67.

 Appellants also argue that Yari is not liable on the lease because Giles executed
an amended lease on November 28, 1989, after Persico was formed. However, at that
time, Yari still owned the property and did not convey it to Persico until the following
January. Because Persico did not own the real property, it could not grant a leasehold to
Giles. 

 Appellants next argue the judgment was improper because section 16.2 of the lease
prevented Giles from looking to any property beyond the real property, which was the
subject of the lease to execute on any judgment. Assuming, without deciding, that this
clause is effective, any limitations on Giles's ability to execute on a judgment does not
make rendition of that judgment error. Appellants cite Oxford Mall Co. v. K & B Mississippi
Corp., 737 F.Supp. 962 (S.D. Miss. 1990), which considered a similar clause. That case
is distinguishable because it was governed by and decided on the Federal Rule of Civil
Procedure permitting motions to dismiss for failure to state a claim. Because those rules
are inapplicable in this proceeding, we overrule appellants' fourth point.

 Appellants' fifth point is based on the trial court's decision to allow Giles to present
evidence of her attorneys fees when she had not properly supplemented discovery
responses. Giles responds that the discovery request at issue was filed in the prior county
court proceeding on April 14, 1994. Because the two county court proceedings were
dismissed to allow the action to be refiled in district court on May 13, 1994, Giles contends
the prior discovery request did not survive the dismissal. Without citation to the record,
appellants assert they served a second request for disclosure, including identification of
experts, on March 14, 2000. When the issue of attorneys fees was tried separately to the
court on March 8, 2001, appellants objected to any testimony of attorneys fees above the
approximately $2,200 provided in the response to discovery in the county court. The court
declined to exclude the testimony of additional fees.

 In a May 1, 2000 motion to exclude Giles's experts, appellants cited the trial court's
February 22, 2000 docket control order setting April 1, 2000, as the deadline for
designation of expert witnesses in conformity with Rule of Civil Procedure 194.2(f). The
only designation which appears in the record is dated February 9, 1994, while the dispute
was before the county court, and lists Giles's attorney as an expert on attorneys fees. The
trial court declined to rule on this motion. We need not further address this motion
because it was filed after the bench trial on attorneys fees and concerned the designation
of experts on economic losses. Likewise, any failure to respond to the March 14 discovery
cannot show reversible error because that discovery request does not appear in this
record and it was also made after the issue of attorneys fees was tried. The absence of
a timely objection or request waives any error. Tex. R. App. P. 33.1(a)(1).

 With regard to Giles's failure to supplement the 1994 discovery answer, Yari does
not cite any authority supporting his contention that dismissal of the county court actions
terminated any duty to supplement. The argument does find some support by analogy in
Aetna Casualty v. Specia, 849 S.W.2d 805 (Tex. 1993), where the court held that a
discovery sanction for failure to supplement answers did not survive a nonsuit. Id. at 807. 
Under the record before us, we cannot say the trial court abused its discretion by
overruling appellants' objection to the testimony of Giles's attorney on attorneys fees. We
overrule their fifth issue.

 Appellants' sixth point alleges Giles failed to establish entitlement to attorneys fees
by statute or contract. Chapter 38 of the Texas Civil Practice & Remedies Code provides
for the recovery of attorneys fees on successful prosecution of several types of claims,
including contract claims. Section 38.001 (Vernon 1997). Section 38.002 establishes
three prerequisites to recover attorneys fees: 1) that the party be represented by an
attorney; 2) that they present the claim to the opposing party; and 3) that payment of the
claim was not tendered before the 30th day after presentation of the claim. Appellants'
argue that Giles failed to establish she presented the claim to them as required, and
therefore is not entitled to attorneys fees under Chapter 38. In response, Giles cites
testimony and letters introduced in which she asserted that appellants' conduct was in
violation of the lease agreement. It is well established that no particular form of
presentment is required to meet the requirements of section 38.02. Whitehead v. State
Farm Mut. Auto. Ins. Co., 952 S.W.2d 79, 89 (Tex.App.--Texarkana 1997), rev'd on other
grounds, 988 S.W.2d 744 (Tex. 1999). The record supports a finding that Giles presented
her claim under the contract.

 The only provision in the lease agreement for recovery of attorneys fees appears
in section 16.15. It allows for the recovery of attorneys fees if either party "brings an action
to enforce the terms hereof or declare rights hereunder." Arguing that Giles's claims were
for recovery of damages rather than specific performance or declaratory judgment, Yari
claims this provision is inapplicable. We disagree. The action was brought to declare
rights under the agreement. The fact that Giles also sought damages does not alter that. 
We overrule appellants' sixth issue.

 In their seventh issue, appellants assign error to the trial court's imposition of a
discovery sanction for abuses alleged to have occurred in 1994, prior to the first trial of the
case. Before the first trial, Giles sought the exclusion of Yari's testimony as a sanction for
discovery abuse. The trial court did not rule on the request until the trial was well
underway. Giles did not object to the court's failure to rule before trial. On appeal, the
First Court of Appeals found Giles waived the right to request sanctions by failing to obtain
a ruling, or object to the failure to rule, before trial. Yari v. Giles, No. 01-95-0570-CV
(Tex.App.--Houston [1st Dist.] October 29, 1995, no writ). 

 At a hearing before the second trial, Yari's counsel raised the issue of discovery
sanctions. The court recounted its recollection of the events leading to the original
discovery sanctions, including Yari's failure to appear at several scheduled depositions
and the court's postponement of sanctions to give him an opportunity to give his
deposition. At Yari's request, the court also limited the deposition to two hours. After
reading the transcript of the deposition, the court described it as "a remarkable piece of
abuse of the judicial process" because of the "obstructionism that was evident in [it]." 

 The trial court found the opinion reversing its original judgment was based on the
failure to give Yari adequate time to secure another witness, not that the sanction was
improper. The court also opined the appellate judgment did not reverse her discovery
sanction order and that order was still in effect, stating that the five years from the original
trial gave Yari adequate time to secure another witness and "if the defendant here today
was thinking that perhaps that prior ruling had been set aside by the appellate court, let
me know." She also expressly authorized Yari to substitute another witness on the matters
that would have been addressed by his testimony. Yari made no objection to the court's
assertion that the judgment on original appeal did not vacate her ruling or declare it invalid. 
The trial court then overruled Yari's objection that Giles had waived the right to seek
sanctions by failing to seek sanctions after the original judgment was reversed. Yari did
not seek a continuance to secure another witness. 

 We need not determine whether the trial court correctly interpreted the First Court
of Appeals' judgment because Yari's failure to object to that interpretation in response to
the trial court's express invitation waived any error that might have existed on that issue.
We overrule appellants' seventh issue.

 Appellants' eighth issue questions the sufficiency of the evidence supporting the
jury's answer of $59,428.78 in actual damages. They also argue there was no evidence
that any damages were the result of their breach of the lease. Giles presented the
testimony of her accountant Patrick Levantino. He testified that Giles had spent $41,186
in improvements to the property, $7,263 on equipment, $7,614 in furniture and $3,085 in
lost security deposits. These expenses totaled $59,158. He also testified that, in his
opinion, a sign was imperative for success of a restaurant and the absence of a sign was
directly related to the failure of Empanada House. This uncontroverted evidence supports
the jury finding of actual damages. We overrule appellants' eighth issue.

 In their ninth issue, appellants challenge the admission of evidence which, they
contend, was admitted in violation of the rule against hearsay. The evidence at issue
includes Giles's testimony that numerous customers told her they had difficulty finding the
restaurant. When she related these comments to the landlord's representative, she was
told to submit the comments in writing. Giles placed a writing tablet in the restaurant and
obtained several written comments from customers concerning their difficulty in finding the 
business. Giles submitted these to the management company, and also introduced them
into evidence over appellants' objection.

 The written comments were admitted for the limited purpose of showing that Yari
had notice of customer complaints rather than for the truth of their contents. We must
presume the jury followed the court's instructions. Moore v. Sims, 882 S.W.2d 844, 847
(Tex.Crim.App. 1994). Moreover, Giles presented the testimony of one of the customers
who submitted a written comment. Consequently, any error in admitting the written
comments was harmless. See Tex. R. App. P. 44.1. We overrule appellants' ninth issue.

 Appellants' tenth issue assigns error to the trial court's failure to award damages
to them for unpaid rent on the ground that Giles abandoned the property in violation of the
lease "because there is no evidence that appellants breached the lease." This is merely
a restatement of appellants' first issue. Having found there was legally sufficient evidence 
to support the jury's finding that appellants breached the lease, we overruled the first
issue. We likewise overrule this issue. 

 Finding no merit in appellants' issues we must, and hereby do, affirm the judgment
of the trial court.


 John T. Boyd

 Chief Justice


Do not publish.

1. Giles does not challenge Persico's standing to prosecute this appeal because the
judgment does not expressly dispose of the claims against Persico. For simplicity we refer
to appellants as Yari.
2. This rule exists independent of Tex. Rev. Civ. Stat. Ann. art. 1302-2.02, which is
the primary focus of appellants' argument. It is likewise independent of article 2.21 of the
Business Corporation Act (Vernon Supp. 2002), which concerns the liability of
shareholders, not promoters.